Jeanne C. JOHNSON, Plaintiff,

v.

BENEFICIAL KANSAS, INC., Defendant.

No. CIV. A. 97–2570–KHV.

United States District Court,
D. Kansas.

Nov. 12, 1998.

Aldo P. Caller, Shawnee Mission, KS, for Plaintiff.

Daniel D. Owen, Shughart, Thomson & Kilroy, Steven D. Ruse, Shughart, Thomson & Kilroy, Overland Park, KS, for Defendant.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

Plaintiff brings claims of employment discrimination under 42 U.S.C. § 2000e *et seq.* (Title VII). The matter is before the Court on defendant's *Motion For Summary Judgment* (Doc # 57) filed September 9, 1998 and defendant's *Motion To Preclude Plaintiff From Seeking Relief On Claims Not Subject To EEOC Charge* (Doc. # 67) filed October 1, 1998. Defendant argues that plaintiff failed to exhaust administrative remedies regarding most of her claims, and that plaintiff has failed to show a genuine issue of material fact regarding employment discrimination. For

the reasons stated below, defendant's motion for summary judgment is sustained in part and denied in part. Defendant's motion to preclude is denied.

### Summary Judgment Standard

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Securities, Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, ‘106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics*, 912 F.2d at 1241.

"[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. *Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

### Facts [1]

In 1989, Beneficial Kansas, Inc., hired plaintiff, an African American female, as a switchboard operator. It first assigned her to its Military unit, which collected loan payments from military personnel. In early 1996, defendant transferred plaintiff to the Refund Anticipation Loan ("RAL") unit, which collected loans which federal taxpayers had entered into in anticipation of federal tax refunds. Pamela Sander managed the RAL unit, while Kim Stearman supervised the clerical team within the RAL unit. Both Sander and Stearman supervised plaintiff.

In both the Military and RAL units, plaintiff's primary duties consisted of operating the switchboard, answering the telephone and transferring calls. On February 5, 1996, plaintiff gave Stearman a handwritten letter which asked for additional training in clerical duties, and communicated other employment concerns and requests. Plaintiff requested training in the hope that defendant would consider her for a clerical position. Plaintiff requested as much computer training as defendant had given Kerri Buck, a Caucasian switchboard operator whom defendant had transferred to a clerical position. Also, plaintiff verbally discussed with Sander her interest in a clerical position.

While defendant gave plaintiff computer training on minute matters, it did not provide the training that she had requested. Defen-

---

1. The following facts are uncontroverted, or where controverted, viewed in the light most favorable to plaintiff.

dant did give plaintiff additional training on tasks (including account transfers, generating receipts and correspondence) which she could perform while seated at the switchboard. Switchboard operators perform certain clerical duties as a regular part of their jobs. These duties, which include processing returned mail, moving accounts, and processing payment receipts on charged-off accounts, are very simple, mechanical matters. Defendant trained Desiree Jones, a Caucasian employee, in areas of clerical work (including posting of payments) which plaintiff did not know how to do and on which she did not receive training. Jones was a part-time employee in defendant's mail room.

In late 1996, Sheryl Zacker, a clerk in the RAL unit, left her employment with defendant. After Zacker's departure, defendant did not offer, advertise, or post information about the open clerical position. Defendant's procedure for filling an open clerical position consisted of hand-picking an employee; it did not involve an application or even a request for the position. When Sander told plaintiff that Zacker was leaving her position, plaintiff did not tell Sander that she was interested in the job. Sander was aware of plaintiff's interest in a clerical position, however, because of her earlier requests. Stearman and Sander decided to fill Zacker's clerical position by transferring a Caucasian employee, Rochelle Howard, from defendant's collections office in Lenexa, Kansas. Howard had experience performing the duties required by the clerical position, including the processing of bankruptcies and the use of specialized functions of defendant's computer system. Stearman did not know any other employees with similar qualifications and did not conduct a search to that effect Sander did not know what experience plaintiff had before moving to the RAL unit.

In March of 1996, plaintiff learned that defendant had denied her request to change a designated holiday ("DH") day to a sick leave day. Plaintiff believed that defendant would come around and honor her request, but it never did so. Plaintiff did not discover that her belief was mistaken until May of 1997.

In May of 1996, the RAL unit passed around a vacation list and plaintiff requested time off for Christmas. Defendant denied plaintiff's request, but plaintiff's experience was that depending on business conditions, defendant sometimes decided later in the year to allow more employees to take vacation during Christmas. In November of 1996, Sander decided to allow Howard, a Caucasian, to take vacation during Christmas.

Sander addressed plaintiff in a demeaning manner for no apparent reason and told plaintiff that she could not experience stress because she only answered the telephone. Sander did not welcome plaintiff into the RAL unit and hardly talked to plaintiff. Sander enforced rules on black employees but not on white employees. When African American employees gathered around plaintiff's desk, Sander scolded them for not working. On one occasion, a group of African American employees gathered around plaintiff's desk, and one employee sat in a chair intended for customers. Sander told the group that they should never gather around the door or sit in the customer chairs again. Caucasian employees did not get in trouble for similar conduct. In fact, Sander sometimes joined in their conversations.[2] Plaintiff wrote several letters complaining about the way Sander treated her.

Plaintiff decided to raise claims of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and she filed an intake questionnaire which discussed her DH day claim. When plaintiff initially met with an EEOC employee, the employee told plain-

**2.** According to plaintiff, another African American employee complained to plaintiff about differential treatment of African Americans and Caucasians by defendant. This evidence is hearsay and therefore is not appropriate evidence for the summary judgment determination. *Starr v. Pearle Vision, Inc.,* 54 F.3d 1548, 1555 (10th Cir.1995). Plaintiff also alleges that Caucasian employees received paychecks before African American employees when they gave notice that they were quitting. Plaintiff's evidence begins to describe a specific example, but plaintiff cuts this evidence short and fails to show how defendant treated the two differently. Without specific facts, plaintiff's allegation is merely conclusory and not probative. *See Thomas v. International Business Machines,* 48 F.3d 478, 485 (10th Cir. 1995).

tiff that she could not bring her vacation claim during Christmas of 1996. On August 11, 1997, plaintiff filed a charge of discrimination which in its entirety stated as follows:

> I became an employee of this employer in 1989 and I currently occupy the position of Switchboard Operator. I learned on or around 11–1–96 that I was denied a transfer to a clerical position. I believe that this was done to me due to my race, Black, in violation of Title VII of the Civil Rights Act.

## Analysis

### A. Exhaustion of Claims

■ Plaintiff's complaint alleges denial of vacation and designated holiday days in March and May of 1996.[3] Defendant argues that aside from her claim that defendant refused to transfer her to a clerical position in November of 1996, plaintiff has failed to exhaust administrative remedies. Under Title VII, the Court only has subject matter jurisdiction over plaintiff's claims if she has exhausted her EEOC administrative remedies. *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir.1997). The exhaustion requirement serves the purpose of giving the agency the information it needs to investigate and resolve the dispute between the employee and the employer. *Khader v. Aspin*, 1 F.3d 968, 971 (10th Cir.1993). Plaintiff must have raised before the EEOC every issue she now brings, or any additional claims must be reasonably related to the claims that she did bring before the EEOC. *Brown v. Hartshorne Pub. Sch. Dist. No. 1*, 864 F.2d 680, 682 (10th Cir.1988).

■ Plaintiff first asserts that defendant has waived its opportunity to raise jurisdictional concerns. Plaintiff cites two Tenth Circuit cases for the proposition that jurisdictional defects regarding EEOC claims are "subject to waiver, laches, and estoppel, very much like any statute of limitations." Both cases, however, address only the requirement of a timely filing, which is not jurisdictional. *See Belhomme v. Widnall*, 127 F.3d 1214, 1217 & n. 1 (10th Cir.1997); *Million v. Frank*, 47 F.3d 385, 389 (10th Cir.1995). This case addresses plaintiff's exhaustion of administrative remedies, "as opposed to a mere requirement of a timely filing." *Jones v. Runyon*, 91 F.3d 1398, 1400 n. 1 (10th Cir.1996). The requirement that plaintiff exhaust all administrative remedies is jurisdictional and is not subject to waiver. *See id.* Defendant is free to raise the issue at any time and has not waived it in this case. *See* Fed.R.Civ.P. 12(h)(3).

■ Plaintiff argues that her claims should not be barred because the EEOC engaged in improper conduct. Defendant argues that plaintiff's evidence does not show improper conduct. The relevant question, however, is not whether the EEOC acted improperly but whether plaintiff acted in good faith to exhaust her administrative remedies. *Woodman v. Runyon*, 132 F.3d 1330, 1342 (10th Cir.1997)(citing *Khader v. Aspin*, 1 F.3d 968, 971 (10th Cir.1993)); *Reese v. Teamsters Loc. Union No. 541*, 993 F.Supp. 1376, 1379 (D.Kan.1998). Plaintiff cites deposition testimony that she attempted to include her Christmas vacation claim in her EEOC charge.[4] Plaintiff also provides her intake questionnaire, which shows that she raised her designated holiday claim with the EEOC. The record reveals no suggestion that plaintiff failed to cooperate with the EEOC. Plaintiff's evidence reveals a genuine issue of material fact whether she acted in

---

**3.** The *Pretrial Order* (Doc. # 56) also includes claims that defendant discriminated against plaintiff by threatening to move her to collections to make room for a Caucasian employee and denying her request for vacation during Christmas of 1997. The Court assumes that there are genuine issues of material fact regarding these claims, because defendant does not challenge them and does not seek summary judgment on those theories of relief. Defendant only challenges plaintiff's claims "based on alleged denial of selected vacation and designated holiday days in March and May 1996." *Motion For Summary Judgment* (Doc. # 57) at 7.

**4.** Plaintiff testified that an EEOC employee told plaintiff that she could not bring the claims in question. Defendant argues that these statements are hearsay. The EEOC employee's statements are not hearsay, because plaintiff does not offer them for their truth. *See* Fed.R.Evid. 801(c). Plaintiff seeks to prove exactly the opposite of what the EEOC officer told her—i.e., that plaintiff cannot bring these claims.

good faith to exhaust her administrative remedies. Consequently defendant is not entitled to summary judgment on the theory that plaintiff failed to exhaust administrative remedies regarding the alleged denial of vacation and holiday days in March and May of 1996.

## B. Timely Filing of Claims

Defendant next argues that plaintiff did not timely raise before the EEOC the claims that defendant denied her vacation and holiday days in March and May of 1996. In Kansas, because the state has statutorily prohibited discrimination, 42 U.S.C. § 2000e-5(e)(1) requires that plaintiff bring her claims within 300 days of the alleged discrimination. *See Martin v. Nannie & the Newborns, Inc.*, 3 F.3d 1410, 1414 n. 4 (10th Cir.1993). The Court must determine whether the challenged claims fall within the 300 day limit.

### 1. Plaintiff's 1996 Christmas Vacation

■ Generally, "the period for filing a discrimination charge begins on the date the employee is notified of an adverse employment decision." *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir.1988) (citing *Delaware State College v. Ricks*, 449 U.S. 250, 256–59, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)). In May of 1996, plaintiff requested time off for Christmas. Defendant denied plaintiff's request at that time. Defendant argues that plaintiff's time began to run on the Christmas vacation claim in May of 1996.

■ Plaintiff can avoid the temporal bar, however, by showing that defendant's denial was part of a continuing violation that also occurred within the filing period. *Gray*, 858 F.2d at 613. The continuing violation doctrine "is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated." *Martin v. Nannie & Newborns, Inc.*, 3 F.3d 1410, 1415 n. 6 (10th Cir.1993). To meet the continuing violation doctrine, plaintiff must show (1) that at least one instance of the discriminatory practice occurred within the filing period and (2) that the earlier acts were part of a continuing policy or practice that includes the act or acts within the statutory period. *Id.* at 1415.

The critical question is whether any violation existed within 300 days of plaintiff filing her EEOC claim. *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). Plaintiff's evidence shows that defendant's denial in May of 1996 was not permanent because depending on business conditions, defendant sometimes allowed more employees to take vacation during Christmas. In May, business conditions could still change and plaintiff could be allowed to take the requested time off. In November of 1996, Sander decided to allow Howard, a Caucasian, to take vacation during Christmas. This evidence supports a reasonable inference that defendant had a continuing practice of granting vacation time around Christmas to non-minorities, while denying the same vacation time to African Americans. This evidence also suggests that defendant applied this practice at least through November of 1996—within 300 days of when plaintiff filed her EEOC claim on August 11, 1997. Most importantly, a reasonable jury could find that plaintiff would not have suspected discrimination until November of 1996, when defendant granted Howard's vacation time. Plaintiff has raised a genuine issue of material fact regarding whether defendant had a continuing practice of discriminating in granting Christmas vacation for 1996. This evidence is sufficient to defeat defendant's motion for summary judgment on the theory that plaintiff did not timely file her EEOC charge.

### 2. Plaintiff's DH Day

■ Plaintiff also alleges that defendant discriminated against her by not changing a designated holiday ("DH") day to a sick day even though defendant commonly did so for non-minority employees. Plaintiff learned that defendant had denied her request in March of 1996, and defendant argues that the time for filing an EEOC charge began to run at that time. Plaintiff responds that she believed defendant would honor her request and did not discover otherwise until May of 1997. Plaintiff cites no evidence regarding why she would have this belief or suggesting that defendant was the cause of it. The Court therefore concludes that plaintiff re-

ceived notification of defendant's denial in March of 1996, and that her time for filing began to run on that date. Plaintiff's claim therefore falls outside of 300 days from when she filed her EEOC claim on August 11, 1997. Defendant is entitled to summary judgment on this claim of discrimination.

## C. Failure To Train

Plaintiff alleges that defendant discriminated against her by failing to provide training which would enable her to transfer to a clerical position. Plaintiff offers no direct evidence of discrimination, and relies upon circumstantial evidence to infer discriminatory intent. The Court therefore applies the burden shifting scheme originally set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See, e.g., Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir.1995). Under the *McDonnell Douglas* framework, plaintiff first must establish a prima facie case of discrimination. If plaintiff succeeds, the burden of production shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.1995). If defendant meets that burden, all presumptions of discrimination drop from the case. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The burden then shifts back to plaintiff to prove by a preponderance of the evidence that defendant's proffered reasons for the challenged actions are merely a pretext for discrimination. *Randle*, 69 F.3d at 451. To establish a prima facie case of failure to provide training, plaintiff must show (1) that she is a member of a protected class; (2) that she applied for training offered by defendant; (3) that despite being qualified, she was rejected for that training; and (4) that defendant continued to offer training to others of her qualifications. *Wooten v. Department of Treasury*, 149 F.3d 1192 (10th Cir.1998)(Table, text available on Westlaw at 1998 WL 339663)(citing *Heim v. Utah*, 8 F.3d 1541, 1546 (10th Cir .1993)).

■ Defendant first argues that it did not reject plaintiff's request for training but rather, in response to plaintiff's request, provided clerical training on processing receipts, account moves, and return mail. Plaintiff responds that defendant provided only the training which plaintiff needed to work the switchboard in the RAL unit. Switchboard operators in the RAL unit performed some clerical work as part of their regular duties, and the record suggests that defendant did not give plaintiff duties outside of her regular switchboard duties. In her letter of February 5, 1996, plaintiff requested clerical training with the hope that it would qualify her for a transfer to a clerical position. Plaintiff's letter specifically requested as much computer training as defendant had given another, Caucasian, employee. Stearman testified that defendant did not train plaintiff in the area that she requested. Plaintiff testified that defendant only gave plaintiff computer training on minute matters, and that after she requested more computer training, defendants purposely failed to train her on the computer. This evidence creates a genuine issue of material fact whether defendant provided only the standard training for switchboard operators and rejected plaintiff's request for additional training which would enable her to transfer to a clerical position.

Defendant next argues that plaintiff has failed to show that it provided similar training to others of plaintiff's qualifications. Plaintiff provides evidence regarding two Caucasian employees who allegedly received more training. Plaintiff first alleges that Kerri Buck, a Caucasian switchboard operator, received training which allowed her to move to a clerical position. Because plaintiff and Buck were both switchboard operators, the evidence suggests that they possessed similar qualifications. Plaintiff requested the training that Buck had received. Plaintiff's request gave defendant sufficient notice of what training plaintiff wanted, because defendant had trained Buck, and Sander admitted that defendant did not provide the training plaintiff had requested. Such evidence allows a reasonable inference that while defendant denied plaintiff the training she requested, defendant provided this training to Buck, a Caucasian with similar qualifications.

Plaintiff next alleges that Desiree Jones, a Caucasian part-time mail room employee, received training in areas of clerical work (including posting of payments) on which plaintiff received no training. Defendant did give Jones training on clerical tasks that plaintiff did not know how to do. Plaintiff fails to show, however, that she possessed similar qualifications as Jones. Plaintiff affords us no evidence of Jones' qualifications or her job description or mail room duties. The fact that Jones was a part-time employee does not automatically prove that she was less qualified than plaintiff for the training she received. Without evidence of Jones' qualifications or job responsibilities, Jones' training is not probative.

Plaintiff has nonetheless provided one example of a similarly-qualified employee who received more training than she did. While this evidence is not overwhelming, plaintiff's burden of showing a prima facie case is not onerous, *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and plaintiff's evidence is sufficient to make a prima facie showing that similarly-qualified non-minority employees received the training that plaintiff requested but did not receive. Examining all of the elements, plaintiff has made a prima facie showing on this record that defendant discriminated against her by failing to provide training.

### D. Denial of Transfer

■ Defendant argues that defendant's failure to transfer plaintiff was not an adverse employment action which would allow plaintiff to recover under Title VII, because plaintiff would not have received any improvement in pay, benefits, or working conditions by a transfer. Because of the remedial nature of Title VII, the Tenth Circuit liberally defines what constitutes an adverse employment action. *See Berry v. Stevinson Chevrolet,* 74 F.3d 980, 986 (10th Cir.1996). The Court must take a case-by-case approach to determining whether a given employment action is "adverse." *Jeffries v.*

*Kansas Dept. of Soc. & Rehab. Servcs.,* 147 F.3d 1220, 1231 (10th Cir.1998). Action against an employee's wishes is adverse employment action. *See Sauers v. Salt Lake County,* 1 F.3d 1122, 1128 (10th Cir.1993). Employer actions that "can have an adverse impact on future employment opportunities" qualify as adverse employment actions. *Berry,* 74 F.3d at 986.

In this case, plaintiff clearly expressed her desire to transfer from her position as a switchboard operator to a clerical position. While the transfer might not have provided tangible benefits to plaintiff, plaintiff obviously viewed a clerical position as an improvement over her current position. Defendant ignored plaintiff's wishes and forced her to continue as a switchboard operator. Defendant's alleged conduct adversely affected plaintiff's life on the job and her employment opportunities. *See Trujillo v. University of Colorado Health Sciences Center,* 157 F.3d 1211, (10th Cir.1998)(Table, text available on Westlaw at 157 F.3d 1211, 1998 WL 610865). The Court finds that defendant's action, if proven, constitutes adverse employment action.

The Court again applies the *McDonnell Douglas* framework to plaintiff's failure to transfer claim. To establish a prima facie case of unlawful failure to transfer, plaintiff must show that (1) she was a member of a protected class; (2) she was qualified for the position; (3) she was rejected; and (4) the position was filled by someone who was not a member of the protected class. *See Thomas v. Denny's, Inc.,* 111 F.3d 1506, 1510 (10th Cir.1997).[5]

■ Defendant first argues that plaintiff fails to show that defendant rejected her request to move to a clerical position. Plaintiff does not need to formally apply for a job, however, to assert a claim for failure to transfer. *Whalen v. Unit Rig, Inc.,* 974 F.2d 1248, 1251 (10th Cir.1992). Rather, "the law requires either that the employer be on specific notice that the plaintiff seeks employ-

5. The parties dispute whether a move from switchboard operator to clerk is a promotion or merely a transfer. The parties agree, however, that the standard for discriminatory failure to promote applies in this case. For the sake of clarity, the Court refers to the action as a transfer.

ment or, where informal hiring procedures are used, that the plaintiff be in the group of people who might reasonably be interested in the particular job." *Id.* (citing *Carmichael v. Birmingham Saw Works,* 738 F.2d 1126, 1133 (11th Cir.1984); *Grant v. Bethlehem Steel Corp.,* 635 F.2d 1007, 1017 (2d Cir. 1980)). The evidence shows that defendant's procedure for filling an open clerical position consisted of hand-picking an employee; it did not involve an application or even a request for the position. Defendant did not offer, advertise, or post information about the open clerical position to anyone. Defendant alleges it was unaware that plaintiff wanted the clerical position which opened in November of 1996. When Sander told plaintiff that Zacker was leaving the clerical position, plaintiff did not tell Sander that she was interested in the job. Plaintiff alleges, however, that defendant was aware of plaintiff's desire to move to a clerical position. Plaintiff's letter of February 5, 1996 expressed a clear interest in moving to a clerical position when one became available. Plaintiff also testified that she verbally discussed with Sander her desire to move to a clerical position. Sander admitted that she was aware that plaintiff was interested in a clerical position when defendant transferred Howard to the open clerical position. The record contains evidence which is sufficient for a reasonable jury to find that defendant was aware of plaintiff's desire to move to a clerical position and therefore rejected plaintiff by transferring a non-minority employee when a clerical position became available.

Because defendant does not attack any other element of plaintiff's proof regarding the failure to transfer, the Court assumes that plaintiff's evidence regarding the other elements is sufficient to withstand summary judgment. The burden now shifts to defendant to provide a nondiscriminatory reason for its action. *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995). Defendant does not need to prove that its nondiscriminatory reason is true or litigate the merits of its reason; defendant only needs to provide a nondiscriminatory reason that is specific and clear. *E.E.O.C. v. Flasher Co., Inc.,* 986 F.2d 1312, 1316 (10th Cir.1992). Defendant argues that it transferred Howard to the cleri-

cal position because she was more qualified than plaintiff. Defendant's nondiscriminatory reason is sufficient to rebut plaintiff's prima facie showing of discrimination.

 Plaintiff must therefore show that defendant's nondiscriminatory reason is a pretext for discriminatory treatment. *Randle,* 69 F.3d at 451. "A plaintiff demonstrates pretext by showing either 'that a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence.' " *Rea v. Martin Marietta Corp.,* 29 F.3d 1450, 1455 (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Plaintiff first argues that defendant's reason is untrue because "there is no objective side-by-side comparison in the record establishing Ms. Howard as better qualified for the position." Plaintiff's *Response,* p. 16. Plaintiff provides evidence that Stearman did not know of any other employees with similar qualifications and did not conduct a search to find any such employees. Also, Sander did not know what experience plaintiff had before moving to the RAL unit. This evidence is not sufficient to create a genuine issue of disputed fact whether defendant's stated reason is pretextual or untrue. In her own deposition, plaintiff admitted that Howard was more qualified for the position. The evidence shows that Howard had experience performing the duties which the position required, including the processing of bankruptcies and the use of specialized functions on defendant's computer system. Plaintiff did not have such experience. Plaintiff disputes this conclusion, but her evidence shows only that she had computer experience, not that she used specialized functions necessary for the clerical job. In addition, plaintiff herself testified that prior to Howard's transfer, plaintiff had never done bankruptcy work. There is no genuine issue of material fact that Howard was more qualified than plaintiff.

While Howard was more qualified, plaintiff's evidence of discriminatory failure to train creates a genuine issue of material fact whether defendant's reason is a pretext for discrimination. Arguably, plaintiff could

have been similarly qualified if defendant had provided the training that she requested. Plaintiff has made a *prima facie* showing that the failure to train was motivated by race. The record reveals a genuine issue of material fact, then, whether plaintiff's lack of qualifications was determined by her race. A reasonable jury could find that defendant's reason is pretextual because but for defendant's discriminatory failure to train, plaintiff would have been equally qualified. Because plaintiff has demonstrated a genuine issue of material fact regarding the failure to transfer, defendant is not entitled to summary judgment on this claim.

**IT IS THEREFORE ORDERED** that defendant's *Motion For Summary Judgment* (Doc. # 57) filed September 9, 1998, be and hereby is **SUSTAINED** in part and **DENIED** in part. Defendant is entitled to judgment as a matter of law on plaintiff's designated holiday claim. Defendant's motion is denied regarding plaintiff's remaining discrimination claims.[6]

**IT IS HEREBY FURTHER ORDERED** that defendant's *Motion To Preclude Plaintiff From Seeking Relief On Claims Not Subject To EEOC Charge* (Doc. # 67) filed October 1, 1998 be and hereby is denied.

---

6. Plaintiff's remaining claims of discrimination by defendant include (1) failure to train; (2) failure to transfer; (3) denial of 1996 Christmas vacation; (4) denial of 1997 Christmas vacation; and (5) threatening to transfer plaintiff to a collections position.