**Melba A. TILMON, Plaintiff,**

v.

**DILLARD'S DEPARTMENT STORES, Defendant.**

No. 97–2234–JWL.

United States District Court, D. Kansas.

July 16, 1999.

Dennis E. Egan, The Popham Law Firm, Kansas City, MO, John M. Klamann, Dirk L. Hubbard, Overland Park, KS, Michael R. Fletcher, Sanders & Simpson, P.C., Kansas City, MO, for Plaintiff.

Melba A. Tilmon, Kansas City, KS, pro se.

John J. Yates, Bryan Cave LLP, Kansas City, MO, Lynn S. McCreary, Bryan Cave LLP, Overland Park, KS, for Dillard Department Stores, Inc., Jack Rodgers, Defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff Melba Tilmon filed suit against defendant Dillard's Department Stores alleging that defendant failed to promote her on the basis of her race, subjected her to a racially hostile work environment, and paid her less wages than it paid similarly situated non-African-American employees in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. This matter is presently before the court on defendant's motion for summary judgment (doc. # 114). As set forth in more detail below, defendant's motion for summary judgment is granted in part and denied in part. Specifically, defendant's motion is granted with respect to plaintiff's racial harassment and pay discrimination claims. Defendant's motion is also granted with respect to plaintiff's failure-to-promote claims arising prior to the applicable limitations period. Defendant's motion is denied with respect to plaintiff's failure-to-promote claims that were filed within the limitations period.

## I. Facts [1]

Defendant Dillard's Department Stores, Inc. operates upscale retail department stores. In September 1986, plaintiff Melba Tilmon began her employment with defendant. For the first four years of her employment, plaintiff worked at defendant's Indian Springs Mall store in Kansas City, Kansas. In September 1990, plaintiff applied for and received a transfer to defendant's Oak Park Mall store in Overland Park, Kansas. Plaintiff began her employment at the Oak Park store as a department manager, an hourly position. The Oak Park store had twenty-four (24) department manager position. Plaintiff remained in that position until April 1994, when the department manager position was abolished and a new salaried position—Assistant Area Sales Manager (AASM)—was created. Defendant's AASM position is an entry-level management position for employees in defendant's sales work force. Of the twenty-four department managers at the Oak Park store, only six (6) were promoted to the position of AASM. Plaintiff was not promoted to the AASM position. The remaining eighteen (18) department managers, including plaintiff, were reclassified as Sales Associates.

Over the next several years, defendant promoted more than twenty employees to the AASM position at the Oak Park store. Until August 1998, plaintiff was denied a promotion to the AASM position and she believes that she was denied a promotion because of her race, African–American.

---

1. In accordance with the applicable summary judgment standard, the facts are uncontroverted or related in the light most favorable to plaintiff.

Plaintiff stayed in the Sales Associate position, working in various departments of the Oak Park Store, until August 1998, when she was promoted to the AASM position. She is currently employed by defendant as an AASM.

Since January 1984, Jack Rodgers has been the store manager of defendant's Oak Park store. In that capacity, Mr. Rodgers is responsible for selecting and recommending employees for promotion to the AASM position. Richard Eagan, during the relevant time period, was a District Manager for defendant and, as such, was responsible for several stores including, *inter alia,* the Oak Park store. In his capacity as District Manager, Mr. Eagan had to approve all promotions to the AASM position for the stores in his area. He never failed to approve a recommendation for promotion to AASM made by Jack Rodgers. There is evidence in the record, however, that Mr. Eagan used racial slurs in the workplace. Mr. Rodgers, for example, testified that he heard Mr. Eagan, on one occasion, refer to an African–American woman as a "jigaboo." Mr. Rodgers further testified that Mr. Eagan, if provoked, would frequently use the term "nigger" in reference to African–Americans. Although Mr. Rodgers objected to Mr. Eagan's use of these terms, he apparently believed he had to tolerate this conduct because Mr. Eagan was "the boss." In addition, Marva Dirks, defendant's Operations Manager of the Oak Park store, testified that she heard Mr. Eagan use the term "jigaboo" on one occasion. Finally, Anne Motley, a former employee of defendant, averred that she heard Mr. Eagan, on several occasions, express concern that there were "too many niggers" in the store.

According to Mr. Rodgers, promotion decisions for the AASM position are based on a variety of factors, including the employee's experience, attendance and tardiness record, ability to work with others, and flexibility. Mr. Rodgers further testified that an employee is not eligible for promotion to the AASM position unless the employee is meeting his or her Sales Per Hour (SPH) goals. Mr. Rodgers knew that plaintiff, since April 1994, was interested in a promotion to the AASM position. According to Mr. Rodgers, he did not consider plaintiff a strong candidate for promotion because of her tardiness record. Mr. Rodgers further testified that he believed plaintiff could not work the hours of an AASM because of her child-care situation. Finally, defendant maintains that plaintiff was simply ineligible for many of the AASM position openings because she had failed to meet her SPH goals for the relevant time period.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party

on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Discussion

In the pretrial order, plaintiff asserts three claims for relief under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Specifically, plaintiff claims that defendant failed to promote her to the Assistant Area Sales Manager position on the basis of her race, subjected her to a racially hostile work environment, and paid her lower wages than similarly situated non-African-American employees.[2] Defendant moves for summary judgment on all of plaintiff's claims.

**2.** Plaintiff initially asserted these claims under both Title VII and § 1981. In her papers, however, she concedes that she failed to exhaust her administrative remedies with respect to her hostile work environment and pay discrimination claims. Thus, only plaintiff's failure-to-promote claims are properly

### A. Failure–to–Promote Claims

Plaintiff claims that defendant, on multiple occasions, failed to promote her to the AASM position based on her race in violation of Title VII and § 1981. In its motion for summary judgment, defendant maintains that plaintiff's suit is time-barred with respect to several of the promotions at issue and that, in any event, summary judgment is appropriate because plaintiff has failed to raise an inference of pretext with respect to the promotion decisions made. As set forth below, the court agrees with defendant that plaintiff's 1981 failure-to-promote claims arising before May 12, 1995 are barred by the applicable statute of limitations and that plaintiff's Title VII failure-to-promote claims arising before December 20, 1995 are time-barred as well. With respect to plaintiff's failure-to-promote claims that were timely filed, however, a reasonable jury could conclude, based on the record before the court, that defendant's promotion decisions were motivated, at least in part, by plaintiff's race. Accordingly, the court denies defendant's motion for summary judgment on plaintiff's timely failure-to-promote claims.

#### 1. The Timeliness Issue

As an initial matter, defendant moves for summary judgment on plaintiff's failure-to-promote claims that arose prior to December 20, 1995 (to the extent those claims are brought under Title VII) or May 12, 1995 (to the extent those claims are brought under § 1981) on the grounds that these claims are time-barred. Specifically, defendant contends that the alleged discriminatory acts underlying these claims occurred well outside the limitations period. In response, plaintiff maintains that these claims are sufficiently related to events occurring within the time limita-

asserted under both Title VII and § 1981. Her remaining claims are asserted under § 1981 only. In any event, the court applies the same standards and burdens to plaintiff's claims regardless of whether they arise under Title VII or § 1981. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1403 n. 3 (10th Cir.1997).

tions period and, thus, constitute a "continuing course of conduct." As set forth in more detail below, the court concludes that an application of the continuing violation theory is simply not applicable to plaintiff's § 1981 claims and is not appropriate with respect to the facts underlying plaintiff's Title VII claims. As such, the court grants defendant's motion for summary judgment with respect to plaintiff's failure-to-promote claims that accrued prior to the relevant statute of limitations period.

The court first analyzes plaintiff's failure-to-promote claims brought under § 1981. Although plaintiff apparently believes that the continuing violation doctrine is applicable to § 1981 claims, the Tenth Circuit has expressly held otherwise. *See Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1513–14 (10th Cir.) ("[B]ecause the continuing violation theory is a creature of the need to file administrative charges, and because a section 1981 claim does not require filing such charges before a judicial action may be brought, the continuing violation theory is simply not applicable."), *cert. denied*, ––– U.S. –––, 118 S.Ct. 626, 139 L.Ed.2d 607 (1997). This court has previously held that the two-year statute of limitations set forth in K.S.A. § 60–513(a)(4) applies to claims brought under § 1981. *See Lasley v. Hershey Foods Corp.*, 35 F.Supp.2d 1319, 1320–22 (D.Kan. 1999); *see also Roberts v. Roadway Exp., Inc.*, 149 F.3d 1098, 1110–11 & n. 10 (10th Cir.1998) ("Injuries claimed under § 1981 are best characterized as injuries to personal rights, and, thus, borrow the statute of limitations period for personal injury actions."). Plaintiff filed her lawsuit on May 12, 1997. Thus, any § 1981 claims based upon promotions awarded prior to May 12, 1995 are time-barred.[3]

The court now turns to address plaintiff's Title VII failure-to-promote claims. In a deferral state like Kansas, a plaintiff asserting a claim under Title VII must file an administrative charge within 300 days after the alleged discriminatory act occurred. *See* 42 U.S.C. § 2000e–5(e)(1). This filing is a prerequisite to a civil suit under Title VII. *Martin v. Nannie & the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993). Plaintiff filed her administrative charge. on October 16, 1996. Thus, according to defendant, only those claims arising after December 20, 1995 (300 days prior to the filing of plaintiff's charge) are properly considered by the court. Plaintiff may recover for discriminatory acts occurring prior to the statutory limitations period, however, if at least one instance of the discriminatory practice occurs within the filing period and the earlier acts are "part of a continuing policy or practice that includes the act or acts within the statutory period." *See Mascheroni v. Board of Regents*, 28 F.3d 1554, 1561 (10th Cir.1994) (quoting *Martin v. Nannie & the Newborns, Inc.*, 3 F.3d 1410, 1415 (10th Cir.1993)).

To invoke the continuing violation exception to the charge-filing deadlines imposed by Title VII, plaintiff must show either (1) a series of related acts taken against a single individual, one or more of which falls within the limitations period; or (2) the maintenance of a company-wide policy of discrimination both before and during the limitations period which evidences a pervasive, institutionalized system of discrimination. *See Purrington v. University of Utah*, 996 F.2d 1025, 1028–29 (10th Cir.1993). The record contains no evidence of a company-wide system of discrimination.[4] Thus, plaintiff must demon-

---

**3.** Plaintiff does not argue, and the evidence does not suggest, that any factual basis exists for tolling the statute of limitations.

**4.** In the pretrial order, plaintiff alleges, in conclusory fashion, that defendant engaged in a "pattern and practice" of discrimination against African–Americans. While this

may be true, plaintiff's evidence does not support this bald allegation. In the absence of any evidence in the record before the court suggesting a "company-wide policy of discrimination," the court concludes that mere allegations of such a policy or practice are insufficient to support an application of the continuing violation doctrine.

strate that defendant engaged in a series of related discriminatory acts against her, at least one of which falls within the limitations period. *See Mascheroni,* 28 F.3d at 1561 (citing *Purrington,* 996 F.2d at 1028).

■■■ To prove a series of related acts, plaintiff must show that the acts rise to the level of a "dogged pattern" of discrimination as distinguished from "isolated and sporadic outbreaks." *Purrington,* 996 F.2d at 1028 (quoting *Bruno v. Western Elec. Co.,* 829 F.2d 957, 961 (10th Cir. 1987)). In analyzing whether alleged discriminatory acts are sufficiently related to constitute a continuing violation or whether such acts are discrete, isolated and completed acts which must be regarded as individual violations, the Tenth Circuit employs a three-factor inquiry: "(i) subject matter—whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence—whether the nature of the violation should trigger an employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate." *See Mascheroni,* 28 F.3d at 1561 (quoting *Nannie & the Newborns,* 3 F.3d at 1415). As the Seventh Circuit recently explained:

> A continuing violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period. The clearest examples involve sexual harassment, where ... duration is often necessary to convert what is merely offensive behavior, and therefore not actionable under Title VII, into an actionable alteration in the plaintiff's working conditions.

*Dasgupta v. University of Wisconsin Bd. of Regents,* 121 F.3d 1138, 1139 (7th Cir. 1997) (citations omitted); *see Nannie & the Newborns,* 3 F.3d at 1415 (plaintiff introduced sufficient facts to raise triable issue on whether defendant engaged in continuing course of conduct where all inci-

dents alleged by plaintiff involved sexual harassment and occurred consistently and frequently over the course of her employment). The alleged violations asserted by plaintiff were not of this character; they were discrete, separate acts and each would have independently supported a Title VII suit. Plaintiff's "failure to bring such a suit cannot be ascribed to the ambiguous or incomplete nature of the discrimination—to [her] being the victim of a campaign whose discriminatory character was not apparent at the time." *Dasgupta,* 121 F.3d at 1139–40. *Cf. Bruno,* 829 F.2d at 961–62 (series of acts constituted a continuing violation under ADEA where evidence demonstrated that defendant had engaged in a overall plan or continuous campaign to force plaintiff to retire).

Finally, the Tenth Circuit has cautioned that the "continuing violation doctrine is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated." *Nannie & the Newborns,* 3 F.3d at 1415 n. 6. Consistent with this principle, the Circuit has restricted the operation of the continuing violation doctrine "to those situations underscored by its equitable foundation." *Id.* In other words, "if an event or series of events should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine." *Id.*

Here, the nature of the alleged discriminatory acts should have triggered plaintiff's awareness of the need to assert her rights. *See Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557–58 (10th Cir.1994) (rejecting plaintiffs' equitable tolling argument that their ADEA causes of action did not accrue when they were given the challenged demotions and transfers, but only when their suspicions of age discrimination were aroused by watching a television program, "A Current Affair."). According to plaintiff, she did not file an EEOC charge in April 1994, the first time she was passed

over for a promotion to the AASM position, because she was "led to believe [by defendant] that she would be given consideration for promotion to AASM as positions became available." Even assuming, however, that defendant promised plaintiff a promotion in the future, plaintiff is not excused from filing a charge of discrimination. As the Tenth Circuit has recognized, "[a] declaration of discrimination need not be issued before the statute of limitations begins to run." *See Hulsey v. Kmart, Inc.*, 43 F.3d 555, 558 (10th Cir.1994) (A cause of action generally accrues under the ADEA "on the date the employee is notified of an adverse employment decision.") (citations omitted). *See also Olson v. Mobil Oil Corp.*, 904 F.2d 198, 203 (4th Cir. 1990) ("If equitable tolling applied every time an employer advanced a non-discriminatory reason for its employment decisions, it would be 'tantamount to asserting that an employer is equitably estopped whenever it does not disclose a violation of the statute.' If this were the case, the [300]-day period for filing a charge would have little meaning."), *quoted in Hulsey,* 43 F.3d at 558.

In sum, the court concludes that plaintiff has failed to set forth sufficient facts to raise a triable issue on whether defendant engaged in a continuing course of discrimination such that the court should consider the incidents that occurred prior to the 300–day filing limitations period. Accordingly, the court grants defendant's motion for summary judgment with respect to plaintiff's Title VII failure-to-promote claims arising before December 20, 1995.

### 2. Substantive Considerations

Having determined that only those claims arising within the applicable limitations period are properly before the court, the court now turns to address the merits of those claims. The court analyzes plaintiff's remaining failure-to-promote claims under the familiar burden-shifting framework first pronounced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In the summary judgment context, plaintiff initially must raise a genuine issue of material fact on each element of her prima facie case of discrimination. *See Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.1995). Once plaintiff establishes her prima facie case, the burden shifts to defendant to offer a legitimate, nondiscriminatory reason for its employment decision. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. 1817; *EEOC v. Flasher Co.*, 986 F.2d 1312, 1317–19 (10th Cir. 1992)). If the defendant comes forward with a nondiscriminatory reason for its actions, the burden then reverts to the plaintiff "to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief." *Id.* (citing *Ingels v. Thiokol Corp.*, 42 F.3d 616, 622 (10th Cir.1994)). If the plaintiff proffers such evidence, the motion for summary judgment must be denied. *Id.*

 To establish a prima facie case in the failure-to-promote context, plaintiff must show that she "(1) belongs to a minority group; (2) was qualified for the promotion; (3) was not promoted; and (4) that the position remained open or was filled with a non-minority." *Simms v. State of Oklahoma*, 165 F.3d 1321, 1328 (10th Cir.1999) (quoting *Reynolds v. School Dist. No. 1*, 69 F.3d 1523, 1534 (10th Cir.1995)), *petition for cert. filed*, 67 U.S.L.W. 3733 (U.S. May 24, 1999) (No. 98–1884). For purposes of its motion, defendant concedes that plaintiff has adequately established her prima facie case. Moreover, defendant has set forth legitimate, nondiscriminatory reasons for its failure to promote plaintiff—plaintiff's tardiness record, her failure to meet established SPH goals, and her inability to work a "flexible" schedule due to her child-care situation. As set forth below, however, the court concludes that plaintiff has come forward with sufficient evidence from which a reasonable jury could infer that defendant failed to promote plaintiff to an AASM position under circumstances giving

rise to an inference of discrimination. Thus, defendant's motion for summary judgment is denied with respect to plaintiff's timely-filed failure-to-promote claims.

In an effort to show that defendant's proffered reasons are pretextual, plaintiff argues that Mr. Eagan, who approved all decisions with respect to AASM promotions, harbored a bias against African–Americans and that this bias, a bias which was known to Mr. Rodgers, may have effected the recommendations that Mr. Rodgers made with respect to the AASM promotions. Certainly, plaintiff has come forward with sufficient evidence from which a jury could reasonably conclude that Mr. Eagan harbored animus against African–Americans; he used vile and degrading racially charged terms in the workplace to refer to African–Americans. Viewing the facts in the light most favorable to plaintiff, Mr. Eagan frequently referred to African–Americans as "niggers," sometimes referred to African–Americans as "jigaboos" and, particularly probative as to causation, used this language with specific reference to the workforce under his ultimate supervision. Moreover, Mr. Rodgers had personal knowledge of Mr. Eagan's conduct, but tolerated his conduct because Mr. Eagan was "the boss." Although Mr. Eagan's comments may not have been made in connection with any of the AASM promotion decisions, his alleged use of this execrable language which is not tolerated in civilized society and which can scarcely be understood other than as evidencing a discriminatory animus towards African–Americans, if true, under all of the facts and circumstances of this case, gives rise to a permissible inference that Mr. Rodgers' promotion recommendations were effected based on his knowledge of

Mr. Eagan's views. *See Tomsic v. State Farm Mut. Auto. Ins. Co.,* 85 F.3d 1472, 1478 (10th Cir.1996) (sufficient showing of pretext made where arguably gender-biased remarks were directed at plaintiffs individually and were made by individual with input into termination decision); *Eslinger v. U.S. Central Credit Union,* 866 F.Supp. 491, 497–98 (D.Kan.1994) (comments by manager that he doubted whether women who gave birth to second child returned to work and his expressed belief that women are better workers before having children were sufficient to create inference of sex discrimination where same manager fired plaintiff after she gave birth to second child).

In light of the evidence presented with respect to Mr. Eagan's comments, coupled with the fact that Mr. Eagan had the "final word" on all AASM promotion decisions, the court concludes that a reasonable jury could infer that defendant's failure to promote plaintiff to the AASM position was based, at least in part, on plaintiff's race. *See Elmore v. Capstan, Inc.,* 58 F.3d 525, 530 (10th Cir.1995) (plaintiff does not need to prove that discriminatory factor was the "sole motivating factor in the employment decision"). Defendant's motion for summary judgment is denied with respect to plaintiff's failure-to-promote claims arising within the applicable limitations period.

*B. Hostile Work Environment Claim*

Plaintiff also alleges that she was subjected to a racially hostile work environment in violation of § 1981. In support of its motion for summary judgment, defendant argues that plaintiff has failed to state a prima facie case of racial harassment.[5] As set forth in more detail below,

---

5. As an initial matter, defendant asserts that summary judgment is appropriate because plaintiff failed to raise a claim for racial harassment until the pretrial order was filed. In essence, defendant moves to strike that portion of the pretrial order relating to plaintiff's racial harassment claim. According to plaintiff, defendant's request is untimely because it was not made within 10 days of the filing of the pretrial order as expressly required in the order itself. The court concludes that defendant's request, made within 10 "civil procedure" days of the filing of the pretrial order, is timely. Nonetheless, because the court finds that plaintiff's claim for racial harassment fails on the merits, it need not address defendant's argument that this claim should be dismissed for plaintiff's failure to raise it in a timely fashion.

the court agrees. After considering plaintiff's evidence concerning the alleged conduct and the applicable standard for analyzing a hostile work environment claim, the court concludes that plaintiff has failed to come forward with evidence sufficient to support the existence of a racially hostile work environment. Accordingly, the court grants defendant's motion for summary judgment on this claim.

 To state a claim for racial harassment, plaintiff must establish that "under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privileges of employment, and (2) the harassment was racial or stemmed from racial animus." *Witt v. Roadway Express*, 136 F.3d 1424, 1432 (10th Cir.1998) (quoting *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir.1994)). Pervasiveness and severity are independent and equal grounds on which to support violations of § 1981. *Id.* (citations omitted). In evaluating whether the alleged harassment is sufficiently severe or pervasive, the court looks at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *See Trujillo v. University of Colorado Health Sciences Center*, 157 F.3d 1211, 1214 (10th Cir.1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). A few isolated incidents of racial enmity are insufficient to survive summary judgment. *Id.* (citing *Bolden*, 43 F.3d at 551).

In support of her racial harassment claim, plaintiff alleges that, on one occasion, she was stopped in the store and accused of shoplifting; that, on several occasions, she watched as defendant's security personnel or other personnel followed her son because of his race; and that defendant's security personnel monitor African–American customers more closely than Caucasian customers—behavior that she has observed. According to

plaintiff, this conduct, together with defendant's discriminatory promotion and pay practices and the racist attitudes of Mr. Eagan, is sufficient to create a racially hostile work environment.

 Plaintiff falls short of showing pervasive or severe harassment. With respect to her allegation that she was stopped and accused of shoplifting, the evidence reflects that on one occasion, in October 1993, one of defendant's employees saw plaintiff changing a display in the store, mistakenly believed that plaintiff was attempting to shoplift, and reported plaintiff to defendant's security. Defendant's security personnel, recognizing plaintiff as an employee, never approached plaintiff about the alleged report. Moreover, when plaintiff discovered the identity of the employee who had reported her to security, she confronted the employee, who apologized for her mistake. Although plaintiff apparently drafted a letter to Jack Rodgers about the incident, she testified that she never sent the letter because the employee who had reported her was a new employee. For several reasons, this incident is insufficient to support a claim for racial harassment. First, the incident was isolated and happened nearly six years ago. Moreover, neither defendant's security personnel nor defendant's management was involved in the incident. In fact, it is undisputed that no one in defendant's management team even knew about the incident. Finally, the employee who reported plaintiff to security apologized for her mistake. *See Witt v. Roadway Exp., Inc.*, 136 F.3d 1424, 1433 (10th Cir.1998) (fact that supervisor immediately apologized for offensive remark abated severity of conduct).

Similarly, plaintiff's allegations that defendant's security monitored African–American customers, including plaintiff's son, more closely than other customers are not sufficient to support a claim for racial harassment. As an initial matter, there is no evidence in the record that defendant's security personnel followed plaintiff's son

because of his race. Plaintiff merely speculates that her son's race was a motivating reason for the actions of defendant's security personnel. *See Trujillo v. University of Colorado Health Sciences Center,* 157 F.3d 1211, 1214–15 (10th Cir.1998) (affirming summary judgment for defendant on racial harassment claim where plaintiff's evidence was insufficient to create a jury question that purported harassment stemmed from racial animus). Moreover, with respect to plaintiff's allegations that she observed defendant's security personnel monitor African–American customers more closely than other customers, she offers no examples of this behavior, fails to offer evidence with respect to how frequently she observed such behavior, and failed to show how this alleged behavior effected her working conditions. In any event, plaintiff's allegations with respect to defendant's security personnel did not involve her personally but rather, assuming the truth of her allegations, involved store customers. Such incidents—directed at others and not the plaintiff—do have some relevance in demonstrating the existence of a hostile work environment. *See, e.g., Hirase–Doi v. U.S. West Communications, Inc.,* 61 F.3d 777, 782 (10th Cir. 1995). As the Seventh Circuit has recognized, however, "the impact of 'second-hand harassment' is obviously not as great as the impact of harassment directed at the plaintiff." *See Gleason v. Mesirow Financial, Inc.,* 118 F.3d 1134, 1144 (7th Cir.1997). This is particularly true where, as here, plaintiff has not shown how this purported harassment affected her general work atmosphere. In the absence of any evidence regarding the frequency or nature of the alleged discriminatory conduct by defendant's security personnel, the court simply cannot assess whether this conduct is sufficiently severe or pervasive to affect plaintiff's working conditions.

Finally, the alleged racist remarks of Mr. Eagan are insufficient to support plaintiff's claim for racial harassment because plaintiff admitted that she never heard Mr. Eagan use racial slurs and never heard Mr. Eagan make a race-based comment. Plaintiff could not subjectively perceive this conduct as creating a hostile work environment unless she knew about it. Thus, the court cannot consider Mr. Eagan's purported comments in connection with plaintiff's claim for racial harassment. *See Hirase–Doi v. U.S. West Communications, Inc.,* 61 F.3d 777, 782 (10th Cir.1995) (Plaintiff "may only rely on evidence relating to harassment of which she was aware during the time that she was allegedly subject to a hostile work environment.").

In sum, plaintiff has failed to offer sufficient evidence that conduct in the workplace which could be found to have stemmed from racial animus was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment. Accordingly, the court grants defendant's motion for summary judgment with respect to plaintiff's racial harassment claim.

### C. Pay Discrimination

 In the pretrial order, plaintiff claims that defendant has paid her less than "similarly situated or less experienced Caucasians." She offers no facts in support of this assertion. Rather, she simply states that defendant "has denied plaintiff any discovery in that regard, so plaintiff is unable to estimate her damages on her pay claim." For the reasons set forth below, summary judgment in favor of defendant on plaintiff's pay discrimination claim is warranted.

In its motion, defendant maintains that summary judgment on plaintiff's pay discrimination claim is appropriate because the record is devoid of any evidence that defendant compensated plaintiff differently than similarly situated non-African-American employees.[6] According to defendant,

---

**6.** Defendant also argues that plaintiff's pay discrimination claim should be dismissed because she failed to raise this claim until the pretrial order. *See supra* note 5. Because the court concludes that plaintiff's pay discrimination claim fails on the merits, it need not address this argument.

sales associates' salaries are determined through the SPH system. Defendant has come forward with evidence demonstrating that the SPH system is an objective system of compensation based solely upon an employee's sales performance as compared to goals that apply equally to all sales associates in the same work area in the same store. The goals and standards are calculated by a computer program. Subjective manipulation of salaries is not possible. Thus, according to defendant, any pay differentials between sales associates are based solely on performance.

In her papers, plaintiff fails to respond in any meaningful way to defendant's arguments. She simply notes that defendant purportedly refused to provide plaintiff discovery on her pay discrimination claim and that plaintiff's motion to compel relating to that issue is pending before Magistrate Judge Reid. For several reasons, plaintiff's response is not sufficient to survive summary judgment on her pay discrimination claim. As an initial matter, plaintiff has failed to comply with Federal Rule of Civil Procedure 56(f). Moreover, although plaintiff's motion to compel was pending at the time she filed her response to defendant's motion, Magistrate Judge Reid, in the meantime, has granted in part and denied in part plaintiff's motion to compel. This ruling was issued more than two weeks ago. Nonetheless, plaintiff has not made any efforts to supplement her papers or seek additional time to respond to defendant's motion with respect to the pay discrimination claim.[7] Finally, there is simply no evidence in the record before the court (nor does plaintiff even argue) that similarly situated non-African-American employees were compensated differently than plaintiff. Accordingly, plaintiff has failed to establish a prima facie case of disparate treatment. *See Trujillo v. University of Colorado Health Sciences Center*, 157 F.3d 1211, 1214 (10th Cir.1998) (to establish prima facie case of disparate treatment, plaintiff must show, *inter alia*, that similarly situated employees were treated differently). For the foregoing reasons, the court grants defendant's motion for summary judgment on plaintiff's pay discrimination claim.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. #114) is **granted in part and denied in part.** Defendant's motion is **granted** with respect to plaintiff's racial harassment and pay discrimination claims. Defendant's motion is also **granted** with respect plaintiff's failure-to-promote claims arising prior to the applicable limitations period. Defendant's motion is **denied** with respect to plaintiff's failure-to-promote claims that were filed within the limitations period.

**IT IS SO ORDERED.**

---

7. The court also notified the parties during a telephone conference late last week that it expected to issue an order regarding defendant's motion for summary judgment by Friday, July 16, 1999. Thus, plaintiff knew that the court was reviewing the motion papers and that the court considered the motion ripe for disposition. Plaintiff did not ask the court for additional time to supplement her papers in light of Judge Reid's ruling on the motion to compel.