**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 14 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

EUGENE TRUJILLO,

     Plaintiff - Appellant,

v.

UNIVERSITY OF COLORADO
HEALTH SCIENCES CENTER,

     Defendant - Appellee.

No. 97-1129

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 94-D-1594)**

---

William S. Finger of Frank & Finger, P.C., Evergreen, Colorado, for Plaintiff-
Appellant.

Patrick T. O'Rourke of Montgomery, Little & McGrew, P.C., Englewood,
Colorado (Kevin J. Kuhn of Montgomery, Little & McGrew, P.C.; Joanne M.
McDevitt and Stephen Zweck Bronner, Special Assistant Attorneys General,
University of Colorado, Denver, Colorado, with him on the brief), for Defendant-
Appellee.

---

Before **LUCERO**, **McKAY**, and **MURPHY**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

Plaintiff Mr. Eugene Trujillo brought a discrimination claim pursuant to Title VII, 42 U.S.C. §§ 2000e-2000e-5, against Defendant University of Colorado Health Sciences Center [UCHSC] under theories of hostile work environment, disparate treatment, and retaliation. Plaintiff appeals the district court's grant of summary judgment on all claims. We review the court's decision *de novo*, drawing all reasonable inferences in favor of Plaintiff, the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Bolden v. PRC, Inc., 43 F.3d 545, 548 (10th Cir. 1994), cert. denied, 516 U.S. 826 (1995). The district court's entry of summary judgment was appropriate if "there [was] no genuine issue as to any material fact and . . . [Defendant was] entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Plaintiff first claims that discrimination based on race created a hostile or abusive work environment that resulted in a violation of Title VII. The district court found the evidence insufficient to support the existence of a racially hostile work environment and, therefore, granted Defendant summary judgment on that claim.

Plaintiff, who is Hispanic, alleges that his hostile work environment began with Defendant's hiring of Dr. Mackie Faye Hill as Director of the Center for MultiCultural Enrichment [CFME], a unit of UCHSC within which Plaintiff was employed. Plaintiff alleges that he was the victim of a hostile work environment

because Dr. Hill, who is black, "document[ed] improprieties in [his] job performance," Plaintiff-Appellant's Opening Br. at 32, criticized and checked on his work, and sent him memos requesting Leave Request and Approval forms for dates when he was absent from the office. He complains that he "was instructed by supervisors to cancel a request for leasing space in a building" to operate a program he supervised, R., Vol. II at 367; that UCHSC "refused to refurbish" the building that he found to operate his program, id.; that his request to attend a leadership program for Hispanics was not approved; and that he was not included as one of the UCHSC representatives to the Latin American Educational Fund Anniversary Dinner. He complains that when the combination to the lock on the office which contained the xerox machine was changed, Dr. Hill's administrative assistant forgot to give Plaintiff the combination. Plaintiff wrote Dr. Hill a memo and the problem was resolved the next day. See id., Vol. III at 1098. Plaintiff complains that in May 1991 he was required to bring a final budget for one of his programs to a meeting, and he further complains that a year later he was excluded from part of the budgeting process for one of his programs. Plaintiff also complains that Dr. Hill placed a corrective action in his personnel file that warned him that he needed to improve his attendance, instructed him that he should not offer employment positions without involving her in the process, and told him not to produce and distribute the Pre-Collegiate Program Newsletter without first

presenting it to her for review and approval.

The record reflects that due to UCHSC's budgetary difficulties, each entity in UCHSC was instructed to prepare four adjusted budget plans. Each respective plan was to reduce its unit's operating budget by 0%, 3%, 7%, and 10%. Dr. Hill submitted her budget plans, noting that the reductions were an "impossible task" and would require CFME to "lay-off [sic] a staff member." Id. at 901-02. She expressed her concern about losing a staff position and requested an exemption from the budget cuts.

The Office of Academic Affairs recommended the elimination of Plaintiff's position. Dr. Hill was instructed to implement the plan proposed by the Office of Academic Affairs, and on May 15, 1991, she informed Plaintiff that his position was being eliminated. See id., Vol. I at 95; Vol. III at 909, 911. At the same time that UCHSC was implementing the system-wide budget reductions, Dr. Hill proposed the formulation of a new CFME position to be funded through a federal grant. This position was never created, however, because the Director of Personnel Services expressed concerns about creating a new position while simultaneously discharging Plaintiff. Plaintiff was not discharged, and his position was funded for the next year through a one-time $30,000 grant from the President's Office that was approved in October 1991. When the one-time grant ended a year later, Plaintiff was discharged due to lack of funds.

-4-

To survive summary judgment, Plaintiff must show that "under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus." Bolden v. PRC Inc., 43 F.3d 545, 551 (10th Cir. 1994) (citing Meritor Sav. Bank v. Vinson, 477 U.S. 57, 67 (1986)). In evaluating the first prong of a hostile work environment claim, we look at all the circumstances including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). As we previously stated in Bolden, a few isolated incidents of racial enmity are insufficient to survive summary judgment. See Bolden, 43 F.3d at 551.

Plaintiff falls short of making a showing of pervasive or severe harassment. See Bolden, 43 F.3d at 551. The record on appeal provides evidence of little more than a collection of unrelated incidents where Plaintiff and Dr. Hill were at odds. Plaintiff was not subjected to anything that was physically threatening or humiliating, nor was he subjected to any offensive utterances. See Harris, 510 U.S. at 23. Plaintiff's list of grievances includes none of the racial comments or ridicule that are hallmarks of hostile work environment claims. See Witt v. Roadway Express, 136 F.3d 1424, 1432-33 (10th Cir. 1998); Smith v. Norwest

Fin. Acceptance, Inc., 129 F.3d 1408, 1413-14 (10th Cir. 1997); see also Vore v. Indiana Bell Tel. Co., 32 F.3d 1161, 1164 (7th Cir. 1994) ("In the typical cases, the question is whether the quantity, frequency, and severity of the racial, ethnic, or sexist slurs create a work environment so hostile as to discriminate against the minority employee."). The hostile work environment that Plaintiff portrays is simply a work environment that exhibits the monitoring and job stress typical of life in the real world. Normal job stress does not constitute a hostile or abusive work environment. As the Seventh Circuit explained, federal law "does not guarantee a utopian workplace, or even a pleasant one. . . . [P]ersonality conflicts between employees are not the business of the federal courts." Vore, 32 F.3d at 1162. We cannot vilify every supervisor that implements a policy with which an employee disagrees or that monitors her employees' conduct. Plaintiff has not cited any cases that have found similar employer conduct to constitute a racially hostile work environment, and we decline to extend the contours of a "hostile work environment" to include Plaintiff's alleged job situation.

Had Plaintiff presented more persuasive evidence that his alleged harassment stemmed from racial animus, we may have disposed of his appeal differently. As we have mentioned, however, there is no evidence of racial harassment; there are no racial slurs or racially harassing comments in his work environment. Plaintiff's only hope for escaping summary judgment was to

present sufficient evidence that the conduct he complains of stemmed from racial animus. Here is the evidence he presented: (1) He is Hispanic and Dr. Hill, his supervisor, is a black female; (2) there were two other blacks in his employment unit and, therefore, blacks constituted the majority in the unit; (3) the prior CFME director who Dr. Hill replaced was Hispanic and did not get along with one of the black CFME employees; (4) this black employee was friends with or related to a few black management-level employees in other UCHSC offices; and (5) when the former Hispanic CFME director discharged another black employee, he was accused of the same discriminatory conduct that Plaintiff is now accusing Dr. Hill of committing. Plaintiff also states that one time he saw Dr. Hill yell at a Hispanic nursing student; that Plaintiff offered to counsel and represent the student regarding the incident; and that, although Dr. Hill allegedly would not allow Plaintiff to represent the Hispanic student, Plaintiff did discuss the incident with the Chancellor's Affirmative Action Advisory Committee. Plaintiff's evidence is insufficient to create a jury question that his stressful working conditions were inflicted upon him because of racial animus. We note that, although Plaintiff alleges that his hostile work environment began when Dr. Hill was hired as CFME director, much of his evidence of Dr. Hill's alleged racial animus occurred before Dr. Hill was associated with the CFME office. We, therefore, affirm summary judgment on Plaintiff's hostile work environment

-7-

claim.

Plaintiff also appeals the district court's entry of summary judgment on his disparate treatment claim. The district court found that Plaintiff met his initial burden of establishing a prima facie case of racial discrimination by showing (1) that he is a member of a racial minority, (2) that he suffered an adverse employment action, and (3) that similarly situated employees were treated differently. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Once an employee carries his burden of demonstrating a prima facie case, the burden of production shifts to the employer to demonstrate "some legitimate, nondiscriminatory reason" for the adverse employment action. Id.; see Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254-55 (1981). If the employer offers a nondiscriminatory reason, the burden shifts back to the employee to show that there is a genuine dispute of material fact as to whether the employer's reason for the challenged action is pretextual and unworthy of belief. See Burdine, 450 U.S. at 256; Ingels v. Thiokol Corp., 42 F.3d 616, 622 (10th Cir. 1994). A reason is not a "'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993). The employer is entitled to summary judgment if the employee "could not offer evidence tending to show the defendant's innocent explanation for his employment decision was false." Randle

v. City of Aurora, 69 F.3d 441, 451 n.14 (10th Cir. 1995).

In this case, the district court concluded that Plaintiff "offered no credible evidence that create[d] a genuine issue of material fact that 'defendant's proffered reason[s] for the employment decision[s] were pretextual–i.e. unworthy of belief.'" R., Vol. III at 1167 (quoting Randle, 69 F.3d at 451). As we discussed above, Defendant explained that Plaintiff was discharged and never rehired due to budget cuts and mandatory staff reductions. After a thorough review of the record, we agree with the district court that Plaintiff has failed to present a jury question as to whether Defendant's reason is pretextual and unworthy of belief.

The district court also granted summary judgment on Plaintiff's retaliation claim. To survive summary judgment, Plaintiff must present evidence establishing a genuine issue of fact that (1) he engaged in protected opposition to statutorily prohibited discrimination; (2) he was subjected to an adverse employment action subsequent to or contemporaneous with his protected opposition; and (3) a causal connection exists between the employer's adverse employment action and the employee's protected activity. See Murray v. City of Sapulpa, 45 F.3d 1417, 1420 (10th Cir. 1995); Cole v. Ruidoso Mun. Sch., 43 F.3d 1373, 1381 (10th Cir. 1994). Former employees qualify as "employees" for purposes of bringing unlawful retaliation claims against a former employer. See Robinson v. Shell Oil Co., 519 U.S. 337, ___ , 117 S. Ct. 843, 849 (1997).

Plaintiff alleges that Defendant retaliated against him by causing his subsequent employer, the Latin American Research and Service Agency [LARASA], to terminate his employment.[1]  We recite below the evidence in the record that is relevant to Plaintiff's retaliation claim.

In her deposition testimony, Plaintiff's supervisor at LARASA, Ms. Maria Guajardo, discussed a June 3, 1993 evaluation of Plaintiff's work.  Ms. Guajardo stated that Plaintiff's job performance evaluation reflected that Plaintiff exhibited the following problems:  (1) low productivity, specifically including a failure to write the required grant proposals; (2) failure to meet self-imposed deadlines; (3) poor follow-up on recommendations made; (4) poor preparation for meetings; and (5) poor prioritization and planning.  See R., Vol. III at 957-58.  She stated that she had spoken to Plaintiff about his low productivity "at least monthly" prior to writing the June performance evaluation.  Id. at 957.

The record reflects that Plaintiff was placed on probation at LARASA for the month of June, given deadline dates and activities that needed to be completed within the following thirty days, and informed that future employment at

---

[1]  In the district court, Plaintiff also claimed that he was retaliated against while employed at UCHSC.  However, because Plaintiff failed to raise that retaliation claim in his opening brief, we hold that he has waived that claim on appeal.  See State Farm Fire & Casualty Co. v. Mhoon, 31 F.3d 979, 984 n.7 (10th Cir. 1994).  We only address Plaintiff's claims of retaliation while he was employed by LARASA.

LARASA was contingent on the completion of the activities and the quality of the work. Ms. Guajardo stated that Plaintiff failed to complete the activities by the deadline dates. Although Plaintiff failed to provide us with the date of his dismissal and our review of the record has not disclosed the date, Ms. Guajardo states in her deposition that she met with Plaintiff to review the list of tasks and, "at that point, informed him that his performance was not up to par; and . . . that [she] would not be continuing his employment at LARASA." Id. at 958. The record indicates that Plaintiff told Ms. Guajardo "that he was going to resign voluntarily, and that, along with his resignation, he had an expectation of severance pay." Id.

In support of his retaliation claim, Plaintiff submitted a memo written by a fellow employee and dated Monday, July 12, 1993. In her memo, Plaintiff's co-worker writes, "Currently, I see no legitimate reason for [Plaintiff's] dismissal. If it was due to performance problems, it is beyond me . . . ." R., Vol. II at 499. In her deposition, Ms. Guajardo stated that there was discussion at a staff retreat on the Friday before the memo, July 9, about "[t]he safety of the office, the process and procedures for staff, *in light of the staff changes*." Id. at 852 (emphasis added). Plaintiff did not attend the July 9 staff retreat, and when Ms. Guajardo was asked how Plaintiff responded to the information in the July 12 memo, she said, "He was gone by then. He was not in the office." Id. at 853. After a

thorough review of the record, the only reasonable view of the evidence is that Plaintiff was informed that he would be dismissed before Monday, July 12, and most likely before Friday, July 9.

On July 8, the Thursday previous to the July 12 memo, Ms. Guajardo removed Plaintiff's office keys. The next day, at the Friday, July 9 staff retreat, Ms. Guajardo stated that she took his keys from him "based on a rumor that he had 'crashed the computer system at his last place of employment.'" Id. at 852. Plaintiff asserts that this rumor is false and that it originated from Dr. Hill. There is no direct evidence that Dr. Hill told anyone at LARASA that Plaintiff destroyed a computer system at UCHSC, but the record does reveal some circumstantial evidence. A UCHSC employee stated in the record that Dr. Hill told him that "prior to when [Plaintiff] left [UCHSC], he had erased the IBM computers." Id. at 843-44. Ms. Guajardo said that she heard the rumor about Plaintiff from a fellow LARASA employee "around the time of [Plaintiff] being terminated." Id. at 853. Dr. Hill stated in the record that she spoke with this same LARASA employee several times in 1993 and that she had told the employee that she "had the same difficulty [with Plaintiff that the employee] was talking about." Id. at 849.

To escape summary judgment on his claim that Defendant retaliated against him by causing him to be terminated by LARASA, Plaintiff must present evidence

of a causal connection between his discharge and the rumor.  See Murray, 45 F.3d at 1420.  Ms. Guajardo testified that her negative evaluation of Plaintiff's job performance was in no way influenced by Dr. Hill or anyone else employed by Defendant.  Plaintiff's unsupported assertions that Ms. Guajardo's discharge of Plaintiff was influenced by the rumor do not create a jury question.  The court appropriately granted summary judgment on the retaliatory discharge claim.

Plaintiff also asserts that Defendant retaliated against him by causing his reputation to be damaged at the July 9 LARASA staff retreat and by causing Ms. Guajardo to remove his office keys on July 8.  Plaintiff did create an issue of fact that Ms. Guajardo's conduct on July 8 and July 9 was caused by a rumor originating from Dr. Hill.  However, in order to establish a prima facie case of retaliation, Plaintiff must also show that damaging his reputation at the July 9 staff retreat and removing his office keys on July 8 constitute adverse employment actions.  Unfortunately, Plaintiff failed to provide the exact date of his dismissal.  After thoroughly reviewing the record, we have not discovered the exact date, but the evidence undoubtedly indicates that the removal of Plaintiff's keys and Ms. Guajardo's comments at the staff retreat occurred either in conjunction with or soon after Plaintiff's dismissal.[2]  Thus, Ms. Guajardo's

---

[2]  In his Amended Complaint, Plaintiff alleged that Defendant transmitted the rumor to LARASA "on or about July 20, 1993."  R., Vol. I at 6.  If we accepted this version of the facts, Defendant's suspect communication to

conduct had no adverse effect on his employment with LARASA because Plaintiff no longer had a job. See Cole, 43 F.3d at 1382 ("The harm to Cole resulted from the nonrenewal and demotion, not from the School District's subsequent explanation of its action. Cole has produced no facts to show that the District's change in position has in any way adversely affected her employment."). Since Plaintiff had already been discharged, he has not and cannot show that the removal of his keys and the comment at the retreat affected his life on the job or his opportunities at LARASA. If he had alleged and presented evidence that his supervisor's conduct deprived him of future employment prospects, our decision might have been different. See Berry v. Stevinson Chevrolet, 74 F.3d 980, 986 (10th Cir. 1996). The only issue Plaintiff has raised is whether his supervisor acted on the rumor to take precautions in connection with her otherwise independent decision to discharge him. Such conduct does not constitute an adverse employment action giving rise to a retaliation claim. The court did not err in granting summary judgment.

Finally, Plaintiff claims that he was denied fundamental fairness in the judicial proceedings due to the failure of the magistrate judge to provide copies of certain orders to his counsel, Mr. William Finger. Plaintiff's claim is without

LARASA would have occurred almost two weeks after the retaliatory actions the rumor is alleged to have induced. Such a version of the facts would obviously require affirmance of the district court's summary judgment.

merit.  Mr. Finger's Entry of Appearance lists him as co-counsel on behalf of

Plaintiff.  Each minute order that did not include Mr. Finger on the certificate of

mailing included Mr. Finger's co-counsel, Mr. Juan Vigil.  Mr. Vigil admits that

he received copies of the minute orders.  Additionally, the magistrate judge had

established a pattern of including only Mr. Vigil on the certificate of mailing for

his minute orders.  Beginning with a minute order filed October 13, 1995, and

continuing with orders filed November 6, 1995, November 21, 1995, and

December 7, 1995, Mr. Finger was omitted from the certificate of mailing.

Because Mr. Finger had plenty of time to recognize the magistrate judge's

omission and remedy it by bringing it to the magistrate judge's attention, and

because Mr. Finger's co-counsel and Plaintiff's agent, Mr. Vigil, received copies

of the minute orders, we hold that Plaintiff was not denied fundamental fairness.

The district court's summary judgment is AFFIRMED.[3]

---

[3] After thoroughly reviewing Plaintiff's contentions concerning the nature of the evidence considered by the district court in ruling on the Motion for Summary Judgment and Plaintiff's assertion that the district court erred by not requiring Defendant to adhere to the district court's rules regarding the format of reply briefs, we conclude Plaintiff's claims are without merit.  The district court did not abuse its discretion on these issues.

-15-