Dr. Cynthia ANNETT, PH.D., and Dr. Raymond Pierotti, PH.D., Plaintiffs,

v.

UNIVERSITY OF KANSAS, and Dr. Thomas Taylor, PH.D., in his personal capacity, Defendants.

No. 99–2070–CM.

United States District Court, D. Kansas.

Feb. 14, 2000.

Alan V. Johnson, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, KS, for Cynthia Annett, PH.D, plaintiff.

Rose A. Marino, Office of General Counsel, Lawrence, KS, Barbara L. McCloud, Office of the General Counsel, Lawrence, KS, for University of Kansas, defendant.

### MEMORANDUM AND ORDER

MURGUIA, District Judge.

██ This matter is before the court on the plaintiff's, Dr. Pierotti's, motion for reconsideration, (Doc. 64), of the court's summary judgment order. (Doc. 62). In its order, the court determined that Pierotti had not presented direct evidence of racial discrimination. Therefore, the court analyzed his claim of racial discrimination in accordance with the *McDonnell Douglas* burden-shifting framework with regard to nine allegations of discriminatory conduct on the part of the defendants. The elements of a prima facie case of discrimination are: (1) Dr. Pierotti is a member of a racial minority; (2) he suffered adverse employment action; and (3) similarly situated employees were treated differently. *See Trujillo v. University of Colo. Health Sciences Ctr.*, 157 F.3d 1211, 1215 (10th Cir.1998). In its order, the court noted that taking laboratory space might constitute adverse employment action:

> Dr. Pierotti alleges that the room housed three of Dr. Pierotti's students. Such an allegation, if true, would tend to show harm to Dr. Pierotti's standing or reputation among his students and would likely constitute adverse employment action. However, in this case Dr. Pierotti has presented no admissible evidence of the alleged facts. The allegations are contained in deposition exhibit 243 and are cited in Dr. Pierotti's statement of fact #17. The deposition exhibit will be admissible as a business record to show that the correspondence occurred and to show the allegations were made. As to the truth of the allegations asserted in the document, the exhibit is inadmissible hearsay. Fed. R.Evid. 801. Because the court can find no affidavit, deposition or other admissible evidence of the alleged facts, it must find that Dr. Pierotti has not met his burden to establish appropriation of the room as an adverse employment action.

(Mem. and Order, Jan. 26, 2000, Doc. 62 at 24). The court also concluded that Dr. Pierotti had failed to show that any similarly situated employee was treated differently.

### I. Arguments

Dr. Pierotti argues that the summary judgment materials included evidence that Room 5011 was used to house three of Dr. Pierotti's students during the relevant time when Taylor appropriated his office space in early 1998. Therefore taking the office space from him constitutes adverse employment action. He continues that although the evidence may not be admissible

in the form presented, its content or substance is admissible, therefore the court must consider that evidence in its summary judgment. Dr. Pierotti cites three types of evidence included in the summary judgment materials which he claims are admissible in content and substance and which show the space was used by three of his students: (1) Dr. Pierotti's letter to the university claiming discrimination and retaliation. (Pl. Pierotti's Mem. in Opp'n, App., Depos.Ex. 243).(2) Portions of Dr. Pierotti's deposition testimony. And, (3) two intra-university memoranda summarizing Dr. Pierotti's concerns and claims. (Pl. Pierotti's Mem. in Opp'n, App., Depos.Exs. 246, 247).

Defendants oppose the plaintiff's motion and note in their opposition, "A party's failure to present its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider." *Anspach v. Tomkins Indus., Inc.*, 817 F.Supp. 1499, 1518 (D.Kan.1993).

## II. Standard

The court's Jan. 26 order included the legal standard for facts precluding summary judgment:

"Conclusory statements going to ultimate issues are not adequate to avoid summary judgment." *Koch v. Koch Indus., Inc.*, 969 F.Supp. 1460, 1471 (D.Kan.1997) Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.* (*quoting Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664 (10th Cir.1998)).

(Mem. and Order, Jan. 26, 2000, Doc. 62 at 6).

A case cited by Dr. Pierotti, immediate following its statement of the proposition that not the form but the content and substance of evidence must be admissible, illustrates the difference between form, and content and substance:

For example, hearsay testimony that would be inadmissible at trial may not be included in an affidavit to defeat summary judgment because "[a] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill." Furthermore, "generalized, unsubstantiated, non-personal affidavits are insufficient to successfully oppose a motion for summary judgment."

*Thomas v. International Business Machines*, 48 F.3d 478, 485 (10th Cir.1995) (citations omitted). That court assumed the statements in the affidavit at issue were **not** hearsay, and were admissible. Nevertheless it concluded that the statements lacked probative value and were properly excludable because they were merely "conclusory allegations without specific supporting facts." *Id.*

## III. Discussion

 Deposition Exhibit 243 will be admissible as a business record. It was a letter sent from Dr. Pierotti to the University. It was kept in the University files in the course of business. Therefore, it may be considered a business record. Even though the letter is a business record, the statements it contains were not made by an employee of the University, with a duty to record the statements, in the regular course of University business. The record may be admissible to show that the letter was received by the university, and to show that the University was aware of Dr. Pierotti's claims. However, it is not admissible for the truth of the matters asserted in the letter. The declarations were made by Dr. Pierotti, and although he is an employee of the university, the statements were not made within the scope of his employment—as a part of his duties to produce records for the University. Therefore the declarations are inadmissible under Fed.R.Evid. 803(6) because

they constitute hearsay within hearsay. *See, e.g., United States v. Vigneau,* 187 F.3d 70, 75 (1st Cir.1999); Fed.R.Evid. 805. Information in business records provided by someone other than one with a duty to gather the information in the normal course of business, is hearsay if offered to prove the truth of the matter asserted. *See,* Fed.R.Evid. 803(6), 805; *Vigneau,* 187 F.3d at 75–76. The declarations, that students were housed in the room, would not be admissible at trial through the letter.

■ Dr. Pierotti's deposition testimony provides the closest argument that there was admissible evidence presented with the summary judgment materials that the students were housed in the room at the relevant times. The court must give the benefit of all reasonable inferences to Dr. Pierotti in this case. However inferring that Dr. Pierotti's students were housed in Room 5011 during the relevant time period is not reasonable from the limited information contained in the deposition testimony available to the court at summary judgment. The deposition testimony at Tab 45 follows:

> ... interpretations, and I find it very interesting that every faculty member in our department who works with students advises and works with students in their laboratory space.
>
> Q. You couldn't—
>
> A. And yet Dr. Taylor seems to think that this is not an appropriate use of laboratory space.
>
> Q. You couldn't mentor students in your own office?
>
> A. Well, it's kind of difficult to mentor five or six at a time like I typically do in my office, which is smaller that this room.
>
> Q. And the lab was larger than your office?
>
> A. Considerably.
>
> Q. And you used it mainly for mentoring students?

> A. No. We were using it for research—you have to remember that I had only had it for four months when it was taken away from me so that there hadn't been an opportunity for a lot of research to be conducted yet. We were using it for some research purposes.
>
> Q. In fact you housed three of your students ... **[end of page, neither the completion of the question nor the answer are available to the court].**

(Def.s Mot. for Summ.J., Ex. 45, p. 713, ll. 1–25).

The testimony does not identify the room at issue in any way expect 'laboratory' or 'lab.' The court might infer that "We were using it for research" referred to Dr. Pierotti and his students, but such an inference is not required by the language. Dr. Pierotti chose to rely on direct evidence rather than to make a prima facie case. Therefore he did not include any affidavit or deposition testimony on point. Now he seeks a second chance, attempting to convince the court to make an inference without specific supporting facts.

Tab 38 contains deposition testimony which might also relate to room 5011 and to Dr. Pierotti's students. At page 1120, the questioner, Ms. Marino for the defendants, refers to Exhibit 335, a letter dated June 8th. "Q. You're requesting in your last sentence ... that Doctor Givens intervene on your behalf and ensure that that room, Room **6011** Haworth Hall, 'which currently houses my student research assistants,' and you mean undergraduates there? A. Yes." (Defs.Mot. for Summ.J., Ex. 38) (Emphasis added). The problem with this testimony is that Room 5011, not Room 6011, was taken from Dr. Pierotti in **February** 1998. If the court assumes that Room 5011 is the one referred to in the question, the fact that it "currently houses" students on June 8 is not probative that it housed students in February 1998, regardless of whether the court infers the letter was dated June 1997, or June 1998.

The testimony by Dr. Pierotti at Tab 39 alleges that "Every other faculty member has lots of research space available to them regardless of whether or not they're using it for research." (Defs.Mot. for Summ.J., Ex. 39, p. 718, ll. 3–6). That testimony says nothing of whether students were housed in Room 5011 during the relevant period. The use of that testimony to establish disparate treatment will be addressed later in this opinion.

■ As his third line of evidence, Dr. Pierotti points to a draft and a memorandum the University prepared concerning his first formal complaint to the Office of Equal Opportunity. (Pl. Pierotti Resp., App., Depos.Exs. 246, 247). The memoranda contain a restatement of Dr. Pierotti's claim that three students were housed in the room when it was appropriated. It is not the declaration of the authors of the memoranda, but merely their restatement of Dr. Pierotti's claims. The memoranda do not indicate that the University adopted the restatement for the truth of the claims. Therefore, they cannot be admissible as admissions or adoptions by a party or the party's agent. *See Wright–Simmons v. Oklahoma City,* 155 F.3d 1264, 1268 (10th Cir.1998); *In re A.H. Robins Co.* 575 F.Supp. 718, 723 (D.Kan.1983). The memoranda are business records, but the declarations by Dr. Pierotti they contain are hearsay within hearsay. Fed.R.Evid. 803(6), 805.

Although Dr. Pierotti could have provided an affidavit stating that his students were housed in Room 5011 during the relevant time period, he did not. Perhaps he did not because in truth he cannot make such a statement. The court simply does not know. This is a central point in claiming adverse employment action, and the court cannot merely **assume** the fact into evidence.

The final—and perhaps most important—reason the court does not reconsider its memorandum is that in order to make a prima facie case of discrimination Dr. Pierotti must show that the University took an adverse employment action against him, **and** that a similarly situated employee was treated differently than he. The standard, as stated in the court's prior order, is:

> In considering whether similarly situated employees were treated differently, a court will look at employees who work with the same supervisor and are subject to the same standards governing discipline and performance evaluation. The court will look at work history, company policies and other relevant circumstances applicable to the plaintiff and the other employees alleged to be similarly situated to make its determination. *See Aramburu v. Boeing Co.,* 112 F.3d 1398, 1404 (10th Cir.1997).

(Mem. and Order, Jan. 26, 2000, Doc. 62 at 22).

■ The allegation that "other faculty members had lots of research space" does not show that any similarly situated employee was treated differently. Dr. Pierotti does not allege in his testimony that the other faculty members were similarly situated, nor does he identify specifically how the faculty members were treated differently. He makes no reference to facts, history, policy or relevant circumstances to support such an allegation. The testimony is a subjective, self-serving determination made by the party alleging discrimination.

Dr. Pierotti's motion is denied because he did not "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In his motion for reconsideration, his attempts fall short of showing specific facts admissible at trial from which the court could infer the taking of room 5011 was an adverse employment action. He has failed to produce admissible evidence which would show that similarly situated employees were treated differently. Finally, none of the evidence identified by Dr. Pierotti in his motion for reconsideration was identified in his opposition to the defendants' motion for summary judgment.

Dr. Pierotti chose to ignore the *McDonnell Douglas* burden shifting analysis in presenting his opposition. In doing so, he did not identify facts by reference to affidavits, depositions or other admissible evidence. Having failed in his first effort, he now seeks a second chance. Even his second chance falls short.

**IT IS THEREFORE ORDERED** that Dr. Pierotti's motion for reconsideration, (Doc. 64), is denied for the reasons stated above.