Anthony W. JACKSON, Sr., Plaintiff,

v.

**CHEYENNE MOUNTAIN CONFERENCE RESORT, Defendant.**

Nos. Civ.A. 99–K–164, Civ.A. 99–K–1687.

United States District Court,
D. Colorado.

April 12, 2000.

As Amended April 13, 2000.

Anthony W. Jackson, Sr., plaintiff pro se.

N. Dawn Webber, Patrick R. Scully, Sherman & Howard L.L.C., Colorado Springs, CO, for defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

KANE, Senior District Judge.

Pro se Plaintiff Anthony W. Jackson, Sr., initiated these consolidated Title VII race-based disparate treatment and retaliation actions after he left his employment in the housekeeping department of Defendant Cheyenne Mountain Conference Resort (CMCR) in October 1998. Jackson, who is African–American, claims he was disciplined more harshly than his Caucasian coworkers while at CMCR, and claims CMCR retaliated against him when he filed an EEOC complaint as a result. Jackson also claims his resignation three months later was actually a constructive discharge precipitated by CMCR's continuing discriminatory mistreatement of him. The case is before me on CMCR's Motion for Summary Judgment.

■ Because disparate treatment and retaliation claims under Title VII are forms of intentional discrimination, the *McDonnell Douglas* burden-shifting analysis applies to the consideration of motions for summary judgment when a plaintiff is attempting to establish this requisite intent through circumstantial, rather than direct, evidence of racial animus. *See Bullington v. United Air Lines*, 186 F.3d 1301, 1315–16 (10th Cir.1999) (applying *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668(1973) to Title VII disparate treatment claim) *and Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir.1993) (applying

*McDonnell Douglas* analysis to Title VII retaliation claim). For purposes of the instant Motion, I will assume that Plaintiff has articulated *prima facie* cases of discrimination and retaliation under Title VII, and that Defendant has come forward with facially legitimate, nondiscriminatory reasons for its employment actions vis á vis Plaintiff.[1] *See Kenworthy v. Conoco, Inc.,* 979 F.2d 1462, 1469 (10th Cir.1992) (explaining how limiting focus to prima facie case may inappropriately short-circuit the McDonnell Douglas framework). All that is left, then, is to determine whether Jackson has met his burden as plaintiff to show that there is a genuine dispute of material fact as to whether the nondiscriminatory reasons offered by CMCR for the challenged actions are pretextual—i.e. unworthy of belief. *See Bullington* at 1316–17 (considering whether plaintiff had met her burden of raising a triable issue on the question of pretext and applying *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995)) (" '[i]f the plaintiff succeeds in showing a prima facie case and presents evidence that the defendant's proffered reason for the employment decision was pretextual—i.e. unworthy of belief, the plaintiff can withstand a summary judgment motion and is entitled to go to trial' ") (quoting *Ingels v. Thiokol Corp.,* 42 F.3d 616, 622 (10th Cir.1994)).

### Constructive Discharge.

Before considering whether Jackson can withstand summary judgment on his disparate treatment and retaliation claims under this standard, I pause briefly to address Jackson's claim for constructive discharge. Jackson acknowledges that, on October 9, 1998, he submitted his resignation, giving the company two weeks' notice of his intent to work for the Postal Service. The parties dispute whether Jackson told the company he "had" a job with the Postal Service or whether he stated he had applied and was hopeful of getting such a job. Jackson states the company immediately took actions to be rid of him before the two weeks, scheduling him for work October 12, 1998, when he had previously been scheduled to be off that day.

While at work on the twelfth, Jackson claims Marks, Whittaker and other CMCR management-level employee Spurlock approached him, stating they had heard he

---

1. The specific assertions and proffered explanations are as follows. Jackson, housekeeping supervisor at CMCR's aquatics center, was suspended for five-days and placed on 90–days probation in April 1998 for leaving the property without permission while still on the clock. Jackson not only denies he left the property without permission, but claims that at least one similarly situated nonminority employee, Elke Broyles, had been disciplined less harshly for the same conduct. Jackson gathered witness statements from co-workers saying he was on the job during the specific dates and times in question, and ultimately filed an EEOC complaint regarding his suspension in July 1998. Jackson was suspended a second time in August 1998 for making two phone calls to coworkers involved in the April incident "on company time." Jackson claims this suspension, and the continued withholding of his housekeeping department gratuities beyond the 90–day probation period, were made in retaliation for his actions in trying to prove his innocence with respect to the grounds stated for the April suspension and for filing the EEOC complaint.

For its part, CMCR offers the declarations of CMCR Executive Housekeeper Margo Marks and Human Resources Director Marcia Whittaker to support its contention that Jackson had been reported by coworker Lisa Carter as being off property while on the clock around 8:45 a.m. April 11, 1998 and April 12, 1998, which justified the imposition of a five-day suspension and 90–day probation period under the employee handbook. CMCR states that probationary employees do not receive a share of gratuities, and states that for the only two pay periods between April 1998 and October 1998 that Jackson was not on suspension-related probation, there were no gratuity monies left over after housekeeping staff received their share for supervisors like Jackson to receive any. With respect to Elke Broyles, Marks states that, while her write-up of Broyles's suspension "mistakenly" omitted reference to a probationary period and the pulling of gratuities, Broyles did, in fact, receive 90–days probation during which her gratuities were pulled. *See* Def.'s Br .Supp.Mot.Summ.J. (Exhs.A(sic)—16) *and* Reply (declarations of Whittaker and Marks attached).

had a job with the Post Office and had given notice. Jackson claims he told them he had not yet formally been hired, but states Marks, Whittaker and Spurlock told him this would be his last day anyway, that his last paycheck was ready for him to pick up, and that leaving now "would be the best for both sides." In his deposition, Jackson acknowledges he was paid for the full two-week notice period, given a $100 bonus, and that the specific conversation was congenial and ended with him giving the CMCR Human Resources Manager (Whittaker) "a hug." Jackson Dep. at p. 159:15.

■ "[N]ot every unhappy employee has an actionable claim of constructive discharge pursuant to Title VII." *Bolden v. PRC, Inc. .,* 43 F.3d 545, 552 (10th Cir. 1994). To prove constructive discharge, a plaintiff must show that his "employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the [plaintiff's] position would feel compelled to resign." *Derr v. Gulf Oil Corp.,* 796 F.2d 340, 344 (10th Cir .1986). Jackson's allegations do not support a claim for constructive discharge under this standard.

■ Jackson does not allege that he felt forced or compelled to resign because of CMCR's alleged discriminatory actions towards him; to the contrary, he admits his resignation was voluntary and was precipitated by his application for work with the Postal Service. The dispute over whether Jackson actually had the Postal Service job in hand before he resigned or not is immaterial; the salient issue is whether Jackson felt compelled to resign because CMCR's discriminatory actions, and whether this belief was reasonable. On that issue, Jackson's allegations and admissions in his deposition that his resignation was prompted by his application for a position with the Postal Service preclude a cause of action for constructive discharge.

*Disparate Treatment.*

■ Disparate treatment claims involve "the most easily understood type of discrimination" in which an employer treats one individual less favorably than others based on his race or other protected status. *Bullington,* 186 F.3d at 1315. Under the applicable *McDonnell Douglas* analysis, once CMCR has come forward with facially legitimate, nondiscriminatory reasons for Jackson's suspension, the burden reverts back to Jackson to offer evidence that raises a genuine dispute of fact as to whether CMCR's proffered reasons are pretextual. To establish pretext, Jackson must show either that " 'a discriminatory reason more likely motivated [CMCR] or ... that [CMCR's] proffered explanation is unworthy of credence.' " *Id.* at 1317 (quoting *Texas Dept. Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).[2]

■ Jackson has chosen the latter tack, submitting no fewer that 13 witness and coworker statements that he was, in fact, at work on the dates and at the times relevant to his April suspension, and a copy of Housekeeping employee Elke Broyles's disciplinary action that, on its

2. Because CMCR specifically challenges Jackson's ability to establish a *prima facie* case of disparate treatment, I will not simply assume its existence and will address the question on its merits. To state a *prima facie* case of disparate treatment, a plaintiff must prove (1) that he is a member of a protected class under Title VII; (2) that he suffered a tangible employment action; and (3) that similarly situated non-minority employees were treated differently. *Trujillo v. University of Colorado Health Sciences Ctr.,* 157 F.3d 1211, 1212 (10th Cir.1998). CMCR denies Jackson has met his burden with respect to the third element of the *prima facie* case because the examples he provides are either of white employees of the engineering department supervised by someone other than Marks or, in the case of housekeeping employee Elke Broyles, that Broyles actually received the same discipline as Jackson, except that Marks "mistakenly omitted reference to the [90 day] probation on the write-up." *See* Marks Declaration dated 2/23/00 at ¶ 5. Viewing the evidence in the light most favorable to Jackson, I find the documents and Employee Communications submitted by Jackson establish that he was treated more harshly than Broyles.

face, gives the employee a five-day suspension but does not put her on probation or pull her gratuities.[3] *See* Attachments to filing entitled "Statement of Disputed Material Facts" (filed 2/11/00 and treated as Plaintiff's Response to Def.'s Mot. Summ. J.). Even though the coworker statements demonstrate, for purposes of summary judgment, that Jackson was not, in fact, off-property April 11 and 12, 1998 as Marks believed, that is not the end of the inquiry. Because Title VII is not violated by the exercise of erroneous or illogical business judgment, *Sanchez v. Philip Morris, Inc.*, 992 F.2d 244, 247 (10th Cir. 1993), the relevant inquiry is not whether Marks was correct in her belief that Jackson was off-property, without permission, and while on the clock on the days in question, but whether Marks honestly believed he was off property and acted in good faith on that belief. *Bullington* at 1318 (applying *Sanchez* and *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir.1997)). In this regard I note the following:

■ The Employee Communication in which Marks suspended Jackson was dated 4/16/98 and purports in its text to have been based on the "written statement" of Lisa Carter. *See* Attach. to Pl.'s Resp. Mot.Summ.J. However, Carter's written statement—which is in German—is dated 4/20/98, and a document purporting to translate it into English, signed by Elke Walter, is dated 4/22/98. *See id.* Marks did complete an Employee Communication memorializing a statement of Carter's, but that Communication, dated 4/15/98, predates either of the "written statements" prepared by or for Carter. Moreover, the

numerous coworker statements submitted by Jackson rebutting Carter's statement and asserting that Jackson was, in fact, at work at the times Carter allegedly saw him off-property range in dates from 4/19/98 to 4/21/98, *before* Carter's statement, or its English translation, appear to have been written. Finally, the record also includes a second letter by Jackson's coworker Gary A. Huber, which states that Huber was not called into Marks's office to verify Jackson's whereabouts on April 11 or 12, 1998, "until *after* Mr. Jackson's suspension was completed." Huber Letter, dated 2/3/000 (attached to Pl.'s Resp. Mot. Summ. J.) (emphasis original).

While this evidence is far from conclusive, I find it adequate to call into question the accuracy of Carter's statement and Marks's good faith in relying on it to suspend Jackson before ascertaining its accuracy. Because Jackson has established a genuine dispute of fact regarding the credibility of CMCR's proffered reason for suspending Jackson and disciplining him more harshly than Broyles, CMCR's Motion for Summary Judgment will be denied as to Jackson's disparate treatment claim. I note that at trial, however, Jackson will bear the burden of any plaintiff in a Title VII disparate treatment case not only to prove he was disciplined more harshly than a similarly situated nonminority coworker, but also to prove the ultimate issue that this was done with a discriminatory animus, i.e., that, but for his race, Jackson would not have received such disparate treatment.

*Pretext—Retaliation.*

■ With respect to Jackson's claim of retaliation, I grant in part and deny in

3. CMCR urges me to disregard these letters and statements because they were not sworn and therefore do not constitute affidavits or other "*competent evidence*" contemplated by Fed.R.Civ.P. 56(c). I note, however, that the only evidence CMCR apparently has to support its decision to suspend Jackson is the hearsay declaration of Marks that employee Lisa Carter (whom, I note further, apparently speaks only limited English and whose handwritten note, in German, was translated by another employee and given to Marks) told her she saw Jackson on the mornings in dispute talking to a neighbor and at a Subway sandwich shop. Jackson's evidence, while not in affidavit form, is in the form of first-person witness statements and these witnesses, presumably, could be produced and sworn at trial. Because Jackson is proceeding *pro se*, I find he is entitled to some leeway in this regard and find his witness statements constitute sufficiently competent evidence to consider them in the instant summary judgment motion.

part CMCR's Motion for Summary Judgment. As an initial matter, I reject the contention that the only actionable retaliatory misconduct of CMCR is that which occurred after Jackson filed his July 1998 EEOC complaint. For purposes of summary judgment, the record clearly establishes that Jackson in immediately undertook efforts after he was suspended in April 1998 to "prove his innocence" on the allegation of having been off-property without permission, including soliciting coworker statements and other corroborating evidence and complaining to management that his suspension was both erroneous and discriminatory. This is protected activity under Title VII. Any adverse employment action taken against Jackson by CMCR after he undertook this activity may properly state a claim for retaliation.

■ Jackson claims that the continued withholding of gratuities after the 90–day probationary period, a second five-day suspension he received in August 1998, and various instances where CMCR management level employees, generally, made life difficult for him and his family (e.g., requiring him to eat in the cafeteria when others were not so required and telling his son to turn down his music when others were not so admonished) were all taken in retaliation for his efforts to clear his name with respect to the April suspension. Jackson's deposition testimony, in which he is vague and offers only conclusory allegations regarding the motivations and conduct CMCR management generally toward him and his family in the months following his suspension, is inadequate to support a claim for retaliation and I grant CMCR's Motion for Summary Judgment as to these claims. I find there is sufficient evidence on the issues of withholding gratuities and the August suspension, however, to allow Jackson's retaliation claims based on those actions to proceed to trial.

It is clear on the face of the August 1998 Employee Communication announcing Jackson's second suspension that it was imposed because of phone calls Jackson made to two employees, including Elke Walker, specifically with regard to his April suspension and whether he had been on or off-property as alleged. CMCR maintains, and Jackson concedes, that company policy generally prohibits employees from making "personal" calls while on the clock. Given the nature of the calls—which at some level were work-related and were not of the "personal" nature generally contemplated by such policies—and the submission, by Jackson, of a coworker's statement identifying four instances in which he personally observed other employees conducting personal business while on the clock, *see* Letter of Dave Murr (dated 5/5/98 and attached to Pl.'s Resp. Mot. Summ. J.), I find there is sufficient evidence to support Jackson's contention that CMCR's motivation in suspending Jackson was less to enforce the company's personal phone calls policy than to retaliate against Jackson for his continued challenges to the validity of his original suspension. By establishing a genuine factual dispute on the question of whether CMCR's proffered reason for suspending Jackson a second time was, in fact, a pretext for retaliation, Jackson's claim survives summary judgment. With respect to Jackson's claim that the continued withholding of his gratuities was retaliatory, rather than a legitimate exercise of the company's business judgment, the same evidence of pretext that precluded entry of summary judgment against Jackson on his disparate treatment claim precludes the entry of summary judgment on his retaliation claim here.

FOR THE FOREGOING REASONS, it is ORDERED that CMCR's Motion for Summary Judgment is GRANTED in part and DENIED in part. The Motion is DENIED with respect to Jackson's disparate treatment and retaliation claims related to his first and second suspensions and the continued withholding of gratuities. It is GRANTED in all other respects, specifi-

cally including on Jackson's claim for constructive discharge.