F I L E D
United States Court of Appeals
Tenth Circuit

APR 14 2005

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

KATHERLINE BAKER,

      Plaintiff-Appellant,

v.

BLUE CROSS-BLUE SHIELD OF
KANSAS, INC.,

      Defendant-Appellee.

No. 02-3310
(D.C. No. 99-4134-JAR)
(D. Kansas)

**ORDER AND JUDGMENT**[*]

Before **MURPHY, HOLLOWAY** and **McCONNELL**, Circuit Judges.

Plaintiff-appellant Katherline Baker sued her former employer, defendant-appellee

Blue Cross and Blue Shield of Kansas, under Title VII of the Civil Rights Act of 1964, 42

U.S.C. §§ 2000e-2000e(16), alleging racial discrimination in the terms and conditions of her

employment, unlawful termination and retaliation.[1] The district court granted the defendant's

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

[1] Plaintiff also invoked state law in her complaint. The district judge observed that
"[a]lthough not controlling, federal decisions applying Title VII are persuasive authority
in construing [the Kansas Act Against Discrimination] claims because the statutory
schemes are analogous. Hence, the Court will apply Title VII standards to the KAAD
claims." Memorandum and Order at 5, Aplt. App. 183 & n.12 (citing *Best v. State Farm
Mut. Auto. Ins. Co.*, 953 F.2d 1477, 1479 (10th Cir. 1991)). Because neither party

motion for summary judgment and plaintiff brings this appeal. We have jurisdiction under 28 U.S.C. § 1291.

**I**

Plaintiff is African-American. She was hired by defendant in 1997 as a Medicaid customer service representative. Her duties included receiving telephone, written and in-person inquiries from beneficiaries, medical service providers, and other staff members. During Ms. Baker's employment, the defendant adopted performance standards for her position. The employer also provided that an employee who failed to meet the performance standards would be subject to a corrective action plan, and that failure to achieve compliance by following the corrective action plan could lead to further discipline, including termination of employment.

On September 2, 1999, plaintiff was issued a notice of unsatisfactory performance, ostensibly because she had failed to meet the standards for accuracy that the employer had adopted. As discussed *infra*, plaintiff contends that accuracy standards were not actually put into effect until January 2000. In any event, on October 6, 1999, plaintiff was given a second notice of unsatisfactory performance for the same alleged shortcoming. Then, on November 3, 1999, she was terminated for still having failed to achieve satisfactory performance on the accuracy standards.

---

contends that application of state law, instead of federal law, would lead to a different resolution of any issue on appeal, we discuss only federal law in this order and judgment.

**II**

Plaintiff brought this suit alleging racial discrimination in violation of state and federal law. Plaintiff originally claimed that she had been subjected to disparate treatment apart from the evaluations of her performance which eventually led to her termination and that she had been subjected to retaliation for having previously filed an administrative discrimination claim. She appeals, however, only on the claim that her termination was an act of racial discrimination, and contentions not related to that claim need not concern us here. Defendant moved for summary judgment prior to trial, contending alternatively that plaintiff could not show a prima facie case of discrimination and that, assuming a prima facie case had been made out, defendant had acted for legitimate, non-discriminatory reasons which plaintiff could not show were mere pretext for unlawful discrimination.

The district court granted the defendant's motion. The district judge found that plaintiff had failed to establish a prima facie case because she had not shown that any similarly situated non-minority employee had been treated more favorably than plaintiff with respect to the performance standards.

**III**

Because the district court granted summary judgment, our review is *de novo*. We must view the evidence in the light most favorable to the plaintiff, as the party opposing summary judgment, and draw all reasonable inferences from the evidence in her favor.

Plaintiff concedes that she did not offer direct evidence of discrimination. To show

discrimination indirectly, she relies on the familiar *McDonnell Douglas* framework.[2] In the first stage of this framework, the burden is on plaintiff to establish a prima facie case of discrimination, which she may accomplish by showing (1) that she is a member of a racial minority, (2) that she was subject to an adverse employment action, and (3) that similarly situated employees who are not members of the minority class were treated more favorably. *See Trujillo v. University of Colorado Health Sci. Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998).[3] The first two parts of the prima facie case are not at issue here.

We conclude that the district court was correct in determining that plaintiff failed to make out a prima facie case because she failed to produce evidence to support a finding in her favor on the third element as set out in *Trujillo*: plaintiff has not identified any similarly situated employee who was treated more favorably than she was. There is no evidence that any other employee, whether or not a member of a minority race, was retained in spite of repeated failure to meet the employer's standard for accuracy. As the district judge noted, plaintiff does not contend that she met the standard. Instead, plaintiff contends that the accuracy standard had not gone into effect at the time of her termination.

We have grave doubts whether plaintiff's evidence was sufficient to raise a genuine

---

[2]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[3]We have acknowledged that the framework is flexible and that a comparison to similarly situated co-workers need not be made in every case. *See E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1195 & nn. 6 & 7 (10th Cir. 2000). In the instant case, however, plaintiff has not suggested any alternative formulation of the elements of the prima facie case. We address only the arguments that she advances here.

-4-

issue of fact on this point. The only support plaintiff musters for her contention is in the form of ambiguous testimony from other employees, none of whom positively stated that the accuracy standard did not go into effect until later.[4] On the other hand, the defendant showed that the document setting out the accuracy standard prominently states that it was to be effective May 1, 1999. Plaintiff makes no contention that this document is not authentic. If it were the case that the deposition testimony of other employees actually said otherwise, then an issue would exist as to whether the policy had indeed been made effective as apparently intended. But because the record suggests that the testimony on which plaintiff relies was actually addressing standards other than the accuracy standard, there likely is no genuine issue of material fact on making the policy effective.

Of course it is not enough that the plaintiff's evidence seems weak. In reviewing a grant of summary judgment, we are obliged to view the record in the light most favorable to the non-movant, which in this case is the plaintiff. We will assume, then, that plaintiff's evidence was just enough to raise a genuine issue as to whether she alone was held to accuracy standards before their actual effective date. We must next determine whether the issue of fact is material.

Plaintiff contends that she alone was held to the standard at the time of her termination

---

[4]Much confusion appears to have been created by the fact that other standards, including a standard for the number of calls to be handled by those working in plaintiff's position, had a different effective date than the standard for accuracy that is at the heart of this case.

and that other employees did not have to meet the standard until January 2000, two months after her termination.[5] Since other African-American employees were performing the same job as plaintiff,[6] this evidence does not support an inference that the disparate treatment was based on discrimination against plaintiff *as an African-American.* "[T]he prima facie case requires '*evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion . . . .*'" *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996)(emphasis in original) (quoting *Teamsters v. United States*, 431 U.S. 324, 358 (1977)). Plaintiff's evidence does not meet this requirement.

The judgment of the district court is

**AFFIRMED.**

ENTERED FOR THE COURT

William J. Holloway, Jr.
Circuit Judge

---

[5]It is interesting to note, although it does not factor into our analysis, that there is no evidence in the record that plaintiff objected on this basis to being put on the corrective action plan two months before her termination.

[6]Plaintiff relies in part on the deposition testimony of Lesa Moore. As the district court pointed out, there is no evidence that Ms. Moore failed to achieve compliance with the accuracy standards. More importantly for the present issue, Ms. Moore is African-American, like plaintiff. Also, plaintiff elsewhere refers to her deposition testimony that a supervisor had reported that upper management had objected to the hiring of a number of African-Americans. App. 152-53.