**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 23, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DAVID ALAN COOPER,

Plaintiff-Appellant,

v.

AMERICAN AIRLINES, INC.,

Defendant-Appellee.

No. 06-5114
(D.C. No. 05-CV-236-JHP-PJC)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **McKAY**, and **BRORBY**, Circuit Judges.

Plaintiff David Alan Cooper appeals from the district court's entry of
summary judgment in favor defendant American Airlines, Inc. (American). We
have jurisdiction under 28 U.S.C. § 1291 and affirm.

Mr. Cooper started working for American in 1986 at its Tulsa, Oklahoma,
maintenance base and describes himself as "a member of American's black

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

minority work force." Aplt. Opening Br. at 1, ¶ 1.  He has worked primarily as a mechanic.  The Transport Workers Union of America (TWU) represents mechanics in their labor relations with American at the Tulsa base, but Mr. Cooper supports a rival union, the Aircraft Mechanics Fraternal Association (AMFA).  On September 9, 2003, American gave Mr. Cooper and others permission to distribute AMFA flyers and other materials at the base as part of efforts to garner enough support to force an election to determine which of the two unions would represent the mechanics at the base.

While Mr. Cooper was handing out the AMFA flyers, Robert Jackson, who at the time was American's Managing Director of Base Maintenance, informed Mr. Cooper that the TWU was not happy about the distribution of the literature. Shortly thereafter, another American employee, Randy McDonald, who is a white male and at the time was the president of TWU, physically confronted Mr. Cooper and tried to wrestle away the flyers, shouting that Mr. Cooper was destroying TWU membership.  He also began "pressing and bumping and humping" Mr. Cooper's leg.  Aplt. App., Vol. II at 328, Cooper Depo. at 81:25. Mr. Jackson intervened in an effort to get Mr. McDonald to stop his conduct.  A scuffle then ensued during which Mr. McDonald swung at and hit Mr. Jackson. Mr. Jackson backed away and Mr. McDonald resumed his confrontation of Mr. Cooper, which included making "African gibberish" noises along with

another American employee, *id.* at 345, Cooper Depo. at 99:3. According to Mr. Cooper, other American employees chanted derogatory racial slurs.

Base security then arrived accompanied by Carmine Romano, the Vice President of Base Maintenance. Mr. Romano spoke with Mr. McDonald and Mr. Jackson. According to Mr. Cooper, Mr. McDonald then resumed his conduct until Mr. Romano intervened again, after which the incident came to a conclusion.

Mr. Cooper complained about the incident to American's human resources department, and eventually American issued Mr. McDonald a "first-step advisory," which apparently is some type of warning, but did not otherwise discipline him. Mr. Cooper did not receive any discipline as a result of the incident. He continued working in the same position without any change in assignments or responsibilities and without any further harassment by Mr. McDonald. He did, however, file this lawsuit, asserting a disparate treatment claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, premised on his view that because Mr. McDonald is white, American did not conduct a sufficient investigation of the incident or impose sufficient discipline on Mr. McDonald.[1] He further asserted a violation of his civil rights under 42 U.S.C. § 1981 to the extent American allegedly denied him an equal

---

[1]     Title VII makes it unlawful for an employer to discriminate against any individual based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1).

right to contract for the union representation of his choice.[2] Each party filed a motion for summary judgment. The district court denied Mr. Cooper's motion and granted American's motion. Mr. Cooper appeals.

"On cross-motions for summary judgment, our review of the summary judgment record is de novo and we must view the inferences to be drawn from affidavits, attached exhibits and depositions in the light most favorable to the party that did not prevail," in this case, Mr. Cooper. *Allen v. Sybase, Inc.*, 468 F.3d 642, 649 (10th Cir. 2006) (quotation omitted). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In order to survive summary judgment in Title VII and § 1981 cases under the familiar burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff first must establish the elements of a prima facie case. *See English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1008 (10th Cir. 2001) (applying *McDonnell Douglas* to both Title VII and § 1981

---

[2] In relevant part, "[s]ection 1981 prohibits racial discrimination in 'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1532 (10th Cir. 1995) (footnote omitted) (quoting 42 U.S.C. § 1981(b)).

claims). The district court concluded that Mr. Cooper had not met this burden with regard to any of his claims. As to his disparate treatment claim, the court explained that Mr. Cooper's dissatisfaction with American's efforts to investigate the incident and punish Mr. McDonald did not constitute an adverse employment action, which is one element of the prima facie case for such a claim, *see Trujillo v. Univ. of Colo. Health Scis. Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998). The court reasoned that American's efforts had no effect on Mr. Cooper's employment status and found that the disparate treatment claim bordered on frivolous.

Although Mr. Cooper did not assert a hostile work environment claim in his complaint, the district court considered his summary judgment argument that the conduct of which he complained rose to that level. In rejecting that claim, the court first stated that whether the harassment was based on or motivated by race was "thin at best," Aplt. App., Vol. II at 454, particularly in view of the underlying union dispute. Second, the court determined that the harassment did not affect a term or condition of Mr. Cooper's employment and did not constitute the "'steady barrage of opprobrious racial comment' as would offend Title VII." *Id.* at 455 (quoting *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1257 (8th Cir. 1981)). And third, considering whether American "'knew or should have known about the conduct and failed to stop it,'" *see id.* (quoting *Hollins v. Delta Airlines*, 238 F.3d 1255, 1258 (10th Cir. 2001) (further citation omitted)), the

-5-

court determined that American had not been negligent but had acted reasonably in responding to the incident.

We agree and affirm the district court's disposition of both of Mr. Cooper's Title VII claims for substantially the same reasons stated in the district court's April 27, 2006, order and opinion. The court addressed each issue appropriately, reviewed all the evidence and granted all reasonable inferences from it in the light most favorable to Mr. Cooper, and reached the correct conclusions.

To establish a prima facie case of discrimination under § 1981, Mr. Cooper must show that (i) he "is a member of a protected class"; (ii) American "had the intent to discriminate on the basis of race"; and (iii) "the discrimination interfered with a protected activity as defined in § 1981." *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir. 2001). As the district court recognized, Mr. Cooper admitted that he did not know of a single mechanic who did not sign a card to force an election between the two unions as a result of the incident. Accordingly, even assuming that Mr. McDonald's conduct can be attributed to American, Mr. Cooper failed to establish any interference with a protected activity as defined in § 1981 as a result of either the incident, American's

investigation of it, or American's decision to give Mr. McDonald no discipline other than issuing the "first step advisory," and the claim fails.

The judgment of the district court is AFFIRMED.

Entered for the Court

Monroe G. McKay
Circuit Judge