**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 20 2004**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

ROGATIEN HOUNTON,

       Plaintiff-Appellant,

v.

GALLUP INDEPENDENT
COMPANY,

       Defendant-Appellee.

No. 04-2017
(D.C. No. CIV-02-1427-RLP/LAM)
(D. N.M.)

---

ORDER AND JUDGMENT *

---

Before **ANDERSON** and **BALDOCK** , Circuit Judges, and **MARTEN** ,** District Judge.

---

      After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

**     The Honorable J. Thomas Marten, District Judge, United States District
Court for the District of Kansas, sitting by designation.

Rogatien Hounton sued his former employer, The Gallup Independent Co., for racial and national origin discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e through § 2000e-17, and for intentional infliction of emotional distress under New Mexico state law. The district court granted summary judgment to Gallup Independent on all claims. Mr. Hounton appeals, arguing that the district court erred in granting summary judgment because (1) he was subjected to a hostile work environment; (2) he was retaliated against; and (3) he was subjected to intentional infliction of emotional distress. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

I. BACKGROUND

Mr. Hounton is from Benin, Africa; his first language is French. He worked as a pressman for Gallup Independent, which publishes a newspaper. The other pressmen were Native Americans. Initially, Mr. Hounton got along well with the other pressmen, and they were teaching each other their first languages.

In October 2001, Mr. Hounton injured his back, precluding heavier lifting. The other pressmen therefore had to assume all the heavier work in order to get the newspaper published. Nonetheless, Mr. Hounton continued to work part time at an automobile service department changing tires and oil.

After he hurt his back, Mr. Hounton alleged that the pressmen made comments concerning his race and national origin. On various occasions, one or

more of the pressmen referred to the song "Coming to America;" stated Mr. Hounton was black because he did not shower and he stinks; commented he was from Africa; referred to him as a baby, a homosexual and a "jungle bunny;" mocked his English; and stated he did not brush his teeth. On one occasion, Mr. Hounton disclosed to his supervisor, Mark Vincent, what was happening to him in the pressroom. *See* Aplt. App. at 135. Although Mr. Hounton did not know if Mr. Vincent spoke to the other pressmen, *id.*, Mr. Vincent did tell the pressmen that remarks, such as "jungle bunny," were intolerable, *see id.* at 76, 126.

On January 12, 2002, one of the pressmen, Ron Livingston, was in charge of the pressroom because Mr. Vincent was absent. According to Mr. Hounton, Mr. Livingston and another pressman came to work drunk and began harassing him. Mr. Livingston directed Mr. Hounton to clock-out and go home. When Mr. Hounton refused, Mr. Livingston proceeded to the time clock, where a fight ensued.[1] Various co-workers stopped the fight. John Sherman, the mailroom supervisor, saw Mr. Livingston chasing Mr. Hounton. Mr. Sherman sent Mr. Hounton home.

---

[1] Mr. Livingston claims that Mr. Hounton hit him; Mr. Hounton claims that Mr. Livingston attacked him. Mr. Livingston had an abrasion on his nose, and Mr. Hounton had an abrasion on his hand.

Mr. Livingston and the other pressmen reported the fight to Bob Zollinger, Gallup Independent's vice president and publisher, the next morning. Mr. Hounton came to work that next day, but left immediately when the other pressmen threatened to "show you we are Native American" and told him to leave if he did not want to get hurt again.     *Id.* at 142.  Mr. Hounton proceeded to the police station to file a report.  Officer Gallegos took the report and then went with Mr. Hounton to the Gallup Independent.  Upon seeing Mr. Hounton, Mr. Zollinger began yelling, terminated Mr. Hounton's employment, called Mr. Hounton a "lazy ass," accused him of starting two fights, and directed Officer Gallegos to remove Mr. Hounton from the premises without permitting an investigation.     *Id.*  at 57.

The district court granted Gallup Independent's motion for summary judgment.  The court concluded that (1) there was no hostile work environment based on race or national origin because the conduct at issue was not so severe or pervasive that the terms and conditions of Mr. Hounton's employment were affected; (2) Mr. Hounton could not establish a prima facie case of retaliation; and (3) as a matter of law, Mr. Hounton could not show intentional infliction of emotional distress.

II. DISCUSSION

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

-4-

matter of law. We review a grant of summary judgment *de novo*, applying the same standard as the district court. We examine the record to determine whether any genuine issue of material fact was in dispute; if not, we determine whether the substantive law was applied correctly, and in so doing we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion.

*Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quotation omitted).

A. HOSTILE WORK ENVIRONMENT

Mr. Hounton argues that his work environment was hostile because he was subjected to racial comments, which ultimately resulted in the assaults leading to his employment termination. He contends the district court improperly dismissed his co-worker's comments as teasing and horseplay, thereby downplaying their severity; failed to consider that Mr. Vincent suggested to the other pressmen that Mr. Hounton was slow because he was from Africa and spoke French as his first language; and should have recognized that Mr. Zollinger's "lazy ass" comment was racially motivated due to the hostile atmosphere at The Gallup Independent.

Title VII prohibits an employer's discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986). Only severe or pervasive

workplace conduct that affects the terms, conditions, or privileges of employment are protected by Title VII, however. *See id.* at 67. Mr. Hounton therefore survives summary judgment by showing "that under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial" or based on national origin. *Trujillo v. Univ. of Colo. Health Sciences Ctr.*, 157 F.3d 1211, 1214 (10th Cir. 1998) (quotation omitted).

Viewing the evidence in the light most favorable to Mr. Hounton, we conclude a reasonable jury could not find that he made a showing of pervasive or severe harassment based on race or national origin. The record fails to support Mr. Hounton's assertion that his co-workers subjected him to repeated verbal and physical attacks. Most of the comments listed above did not refer to Mr. Hounton's race or national origin. "[M]ere utterance of an . . . epithet which engenders offensive feelings in an employee, does not sufficiently affect the conditions of employment to implicate Title VII." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotation and citation omitted); *see also Trujillo*, 157 F.3d at 1214 (requiring more than a few, isolated incidents of racial enmity to survive summary judgment); *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994) ("Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments."). Mr. Vincent took action immediately after

learning of the "jungle bunny" comment.  To the extent the other pressmen mocked Mr. Hounton's English, they, too, spoke in broken English.  As the district court noted, the comments and actions of the pressmen were consistent with the atmosphere of horseplay in the pressroom.

There is no evidence that the entire environment at the newspaper was racially hostile.  And the record does not support Mr. Hounton's unsupported assertion that Mr. Vincent used Mr. Hounton's national origin to motivate and encourage the other pressmen to taunt and harass him.  If anything, the record indicated that Mr. Vincent expected the other pressmen to be kind and patient with Mr. Hounton.   *See* Aplt. App. at 128.

We agree with the district court that what the record does show is that Mr. Hounton's co-workers became frustrated with him after he injured his back; did not perform his share of the work at Gallup Independent, but continued to do heavier lifting at his part-time job; and watched them working and laughed at them.  Even Mr. Hounton admits his co-workers complained that he was too slow in performing his duties.   *See id.* at 133.  This type of personality conflict is not appropriate for Title VII relief.    *Cf. Trujillo* , 157 F.3d at 1214 (recognizing that employee personality conflicts are not business of federal courts);      *Aramburu v. Boeing Co.* , 112 F.3d 1398, 1410 (10th Cir. 1997) (recognizing that general

harassment is not actionable under Title VII).  Nor is it enough to survive summary judgment. [2]

Only Mr. Hounton indicates there was a discriminatory hostile work environment; overwhelmingly, all of the other affidavits and depositions indicate the other pressmen's frustration was with Mr. Hounton's failure to do his share of the work.  Mr. Hounton's subjective belief that he has been discriminated against, standing alone, is not sufficient to preclude the grant of summary judgment.  *See Stover*, 382 F.3d 1074 n.2.  Accordingly, because there was not sufficient evidence of a pervasive environment of racial or national-origin taunting or an environment encouraging Mr. Hounton's co-workers to engage in racially motivated activity, we conclude the district court correctly granted summary judgment.

---

[2]  The record does not support Mr. Hounton's assertion that Mr. Zollinger lied at his deposition when he testified that he watched a surveillance videotape showing Mr. Hounton hitting Mr. Livingston.  According to Mr. Zollinger and Diane Chavez, this videotape was taped over and no longer exists.  It is pure speculation on Mr. Hounton's part that there actually was no videotape, based on the facts that Mr. Zollinger never mentioned the videotape to Officer Gallegos or in the materials submitted to the Equal Employment Opportunity Commission. These mere allegations are insufficient to preclude the granting of summary judgment.  *See Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004) ("Mere allegations . . . are insufficient to survive a motion for summary judgment.").

B.  RETALIATION

Next, Mr. Hounton argues he was fired in retaliation for bringing Officer Gallegos to The Gallup Independent.  Title VII prohibits retaliation against an employee who opposes any unlawful employment practices.  *See* 42 U.S.C. § 2000e-3(a).  To show retaliation, Mr. Hounton must first present a prima facie case of retaliation, showing that (1) he "engaged in protected opposition to discrimination;" (2) he suffered "an adverse employment action;" and (3) "there exists a causal connection between the protected activity and the adverse action." *Stover*, 382 F.3d at 1071.

The district court decided that plaintiff failed to prove the first element, and we agree.  Although filing a police report can be protected activity, *see Worth v. Tyer*, 276 F.3d 249, 265 (7th Cir. 2001), Mr. Hounton's police report contains nothing about discriminatory activity based on race or national origin, *see* Aplt. App. at 56-57. [3]  The absence of any reference to discriminatory activity in the report precludes this retaliation claim because Gallup Independent could not engage in retaliation if it was unaware that Mr. Hounton opposed a violation of Title VII.  *See Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002).  Also, nothing in the record suggests that Mr. Zollinger was aware of any

---

[3]  Although Officer Gallegos questioned in his mind whether there was racial hatred against Mr. Hounton, Mr. Hounton did not raise it to him.  Aplt. App. at 150.

alleged race or national origin discrimination against Mr. Hounton. Thus, under the circumstances of this case, making the police report did not constitute protected activity for a prima facie case. Accordingly, we conclude the district court correctly decided that Mr. Hounton failed to present a prima facie case of retaliation.

C. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Finally, Mr. Hounton argues the district court erred in granting summary judgment on his state-law claim of intentional infliction of emotional distress. To establish a claim of intentional infliction of emotional distress, Mr. Hounton must prove: "(1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the claimant's mental distress." *Trujillo v. N. Rio Arriba Elec. Co-op, Inc.*, 41 P.3d 333, 342 (N.M. 2001) (quotation omitted). We agree with the district court that the conduct at issue here is not "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Mr. Hounton's breaking into tears at work on one occasion due to a comment made to hurry up with his work is insufficient to

establish severe emotional distress, such that a reasonable person could not cope with the mental distress caused by the situation. *See id.* at 343. And Mr. Zollinger's screaming that Mr. Hounton was a "lazy ass" and refusal to permit a police investigation of the prior day's incident while the witnesses were working also did not constitute extreme and outrageous conduct. Accordingly, we conclude the district court correctly granted summary judgment on this claim.

The judgment of the district court is AFFIRMED.

Entered for the Court

J. Thomas Marten
District Judge